Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Payam Shahian (SBN 228406)
Pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles CA 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

[Additional attorneys listed below signature line]

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIE ZAKSKORN, *et al.*, *on behalf of themselves and all others similarly situated*,<br><br>        *Plaintiffs*,<br><br>    *v.*<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>        *Defendant*. | Case No. 11-CV-02610-KJM-KJN<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   February 27, 2015<br>Time:  10:00 a.m.<br>Judge: The Hon. Kimberly J. Mueller |

**PLEASE TAKE NOTICE** that on February 27, 2015 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of the above-captioned Court, located at 501 I Street, Sacramento, CA 95814, The Hon. Kimberly J. Mueller presiding, Plaintiffs will, and hereby do, move this Court for an Order granting final approval of the settlement agreed by the parties in this matter, granting reasonable attorneys' fees and expenses in the total amount of $850,000,

and granting service awards to the three Representative Plaintiffs totaling $7,500 in the aggregate.  (*See* Settlement Agreement, attached as Exhibit A to the Declaration of Michael A. Caddell, attached as Exhibit 1, ("Caddell Decl.").)[1]

Pursuant to the Court's May 2, 2014 Order preliminarily approving the Settlement, (Dkt. 63), and July 10, 2014 Order approving the jointly proposed notice plan, (Dkt. 68), notice of this Motion was provided to members of the provisionally certified class in September–October 2014 by direct U.S. Mail.  (*See* Declaration of Ruby Carlton, attached as Ex. 14 ("Settlement Administrator Decl.") ¶¶ 6–7.)  Plaintiffs now request that the Court enter an Order approving the Settlement and granting relief as follows:

1.   Certifying, for settlement purposes only, a Class consisting of all residents of the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who currently own or lease, or previously owned or leased, a 2006–2011 Honda Civic with rear drum brakes (DX and LX trims) distributed for sale or lease in the United States (including Puerto Rico, Guam, and the U.S. Virgin Islands).[2]

2.   Granting final approval of the Settlement Agreement as fair, reasonable, and adequate and directing its implementation according to its terms and provisions.

3.   Granting attorneys' fees and expenses in the amount of $850,000.

4.   Granting service awards to the three Representative Plaintiffs of $2,500 each, totaling $7,500.

5.   Discharging and releasing Defendant and Released Persons on the terms and conditions set forth in the Settlement Agreement.

6.   Appointing Plaintiffs Stacie Zakskorn, Rachelle Shreiber, and Javier Hidalgo as Class Representatives.

7.   Granting such other relief as the Court deems just and proper.

---

[1]  All capitalized terms herein have the meanings defined in the Settlement Agreement.

[2]  The Settlement Class Vehicles do not include EX or Hybrid trims of the 2006–2011 Honda Civics or any vehicles listed in this paragraph that were (a) salvaged prior to any Brake Pad Replacement; (b) manufactured for use in a foreign country; and/or (c) previously registered in a country other than the United States.

This Motion is based on the accompanying Memorandum of Points and Authorities; the Declaration of Michael A. Caddell, attached as Ex. 1 ("Caddell Decl."); the Declaration of Payam Shahian, attached as Ex. 2 ("Shahian Decl.); the Declaration of Robert L. Starr, attached as Ex. 3 ("Starr Decl."); the Declaration of Matthew R. Mendelsohn, attached as Ex. 4 ("Mendelsohn Decl."); the Declaration of L. Timothy Fisher, attached as Ex. 5 ("Fisher Decl."); the Declaration of Stacie Zakskorn, attached as Ex. 6 ("Zakskorn Decl."); the Declaration of Rachelle Schreiber, attached as Ex. 7 ("Schreiber Decl."); the Declaration of Javier Hidalgo, attached as Ex. 8 ("Hidalgo Decl."); the Declaration of Brian Newman, attached as Ex. 9 ("Newman Decl."); the Declaration of Ruby Carlton, attached as Ex. 10 ("Settlement Administrator Decl."); the Proposed Order Granting Final Approval of Class Action Settlement; the records, pleadings, and papers filed in this action; and such other argument or evidence as may be presented to the Court at the hearing on this Motion.

Defendant American Honda Motor Co., Inc. does not oppose this motion.

Dated: January 7, 2015                              Respectfully submitted,

By:   */s/ Michael A. Caddell*
          Michael A. Caddell (State Bar No. 249469)
          mac@caddellchapman.com
          Cynthia B. Chapman (State Bar No. 164471)
          cbc@caddellchapman.com
          CADDELL & CHAPMAN
          1331 Lamar, Suite 1070
          Houston TX 77010-3027
          Telephone:  (713) 751-0400
          Facsimile:  (713) 751-0906

          Payam Shahian (State Bar No. 228406)
          Pshahian@slpattorney.com
          STRATEGIC LEGAL PRACTICES, APC
          1875 Century Park East, Suite 700
          Los Angeles CA 90067
          Telephone:  (310) 277-1040
          Facsimile:  (310) 943-3838

          Robert L. Starr
          THE LAW OFFICE OF ROBERT L. STARR
          23277 Ventura Blvd.
          Woodland Hills CA 91364
          Telephone:  (818) 225-9040
          Facsimile:  (818) 225-9042

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Matthew R. Mendelsohn
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway, 2nd Floor
Roseland NJ 07068
Telephone:  (973) 228-9898
Facsimile:  (973) 228-0303

L. Timothy Fisher (State Bar No. 191626)
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT ........................ 2

    A.      Plaintiffs' Pre-Suit Investigation ............................................................. 2

    B.      The Litigation .......................................................................................... 3

        1.      The Zakskorn and Hidalgo Actions ............................................. 3

        2.      The Allegations Against AHM ..................................................... 3

        3.      The Parties' Discovery and Settlement Negotiations ................... 4

        4.      Mediation ..................................................................................... 4

        3.      Preliminary Approval .................................................................... 4

    C.      Terms of the Proposed Settlement .......................................................... 5

        1.      The Proposed Settlement Class .................................................... 5

        2.      Brake Pad Replacement and Reimbursement After the Effective
                Date ............................................................................................... 5

        3.      Replacements Before the Effective Date ...................................... 6

        4.      Required Proof for Reimbursement .............................................. 7

        5.      The Proposed Speedy and Simple Claims Process ....................... 7

        6.      The Notice to the Class of the Settlement .................................... 7

        7.      Releases ........................................................................................ 8

        8.      Attorneys' Fees and Expenses ...................................................... 8

        9.      Service Awards ............................................................................. 8

III.    ARGUMENT AND AUTHORITIES .......................................................................... 9

    A.      The Court Should Approve the Settlement as Fair, Reasonable, and
            Adequate. ................................................................................................. 9

        1.      The Strength of Plaintiffs' Case ................................................. 10

        2.      The Risk, Expense, Complexity, and Likely Duration of Further
                Litigation ................................................................................... 11

        3.      The Risk of Maintaining Class Action Status Throughout the Trial ......... 11

        4.      The Amount Offered in Settlement ............................................ 12

5. The Extent of Discovery Completed and the Stage of the Proceedings .................................................................................. 15

6. The Experience and Views of Counsel ...................................................... 15

7. The Presence of a Governmental Participant ............................................. 16

8. The Reaction of Class Members to the Proposed Settlement .................... 16

B. The Court-Ordered Notice Program Meets Due Process Standards and Has Been Fully Implemented ................................................................................. 17

C. Class Certification is Appropriate for Settlement Purposes. .................................. 17

1. The Proposed Class is Sufficiently Numerous and Ascertainable. ............. 18

2. There Are Questions of Law and Fact Common to the Class .................... 18

3. Plaintiffs' Claims Are Typical of the Proposed Settlement Class. ............ 19

4. Plaintiffs and Class Counsel Will Adequately Represent the Interests of the Settlement Class. .............................................................. 20

5. Common Issues Predominate Over Individual Issues. ............................... 20

6. Class Settlement Is Superior to Other Available Means of Resolution. ................................................................................................ 22

D. The Court Should Award the Requested Attorneys' Fees. .................................... 24

1. The Requested Fee Is Reasonable According to Lodestar Principles ................................................................................................... 24

2. The Requested Fee is Reasonable in Light of the Risk Counsel Faced in Undertaking This Litigation and the Results Achieved. ............. 27

E. The Court Should Award the Requested Expenses. .............................................. 29

F. The Court Should Award the Requested Service Awards to the Representative Plaintiffs. ...................................................................................... 30

IV. CONCLUSION .................................................................................................................. 30

1

## TABLE OF AUTHORITIES

2

## CASES

3

*Aarons BMW of North America, LLC,*
    Case No. 11-cv-7667, 2014 WL 4090564

4
    (C.D. Cal. Apr. 29, 2014) ........................................................................ *passim*

5

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)......................................................................... 18, 23–24

6

*Armstrong v. Davis,*
7
    275 F.3d 849 (9th Cir. 2001) ........................................................................ 19

8

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ........................................................................ 22

9

*Browne v. American Honda Motor Co., Inc.,*
10
    Case No. 09-cv-06750, 2010 WL 9499072
    (C.D. Cal. July 29, 2010) ........................................................................ *passim*

11

*Browne v. American Honda Motor Co., Inc.,*
12
    Case No. 09-cv-06750, 2010 WL 9499073
    (C.D. Cal. Oct. 5, 2010)................................................................. 22, 26, 28

13

*Browning v. Yahoo! Inc.,*
14
    Case No. 04-cv-01463, 2007 WL 4105971
    (N.D. Cal. Nov. 16, 2007)........................................................................ 29

15

*Cholakyan v. Mercedes-Benz, USA, LLC,*
16
    281 F.R.D. 534 (C.D. Cal. 2012) ................................................................. 12

17

*Chu v. Wells Fargo Investments, LLC,*
    No. 06-cv-7924, 2011 WL 672645

18
    (N.D. Cal. Feb. 16, 2011)........................................................................ 28

19

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ................................................................. 9–10

20

*Daffin v. Ford Motor Co.,*
21
    458 F.3d 549 (6th Cir. 2006) ........................................................................ 22

22

*Daugherty v. American Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006) ................................................................. 11, 13

23

*Edwards v. Ford Motor Co.,*
24
    2012 U.S. Dist. LEXIS 81330 (S.D. Cal. June 12, 2012 ................................. 12

25

*Estrella v. Freedom Fin'l Network,*
    2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) ......................................... 18

26

*Glass v. UBS Fin. Servs., Inc.,*
27
    Case No. 06-cv-4068, 2007 WL 221862
    (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ................. 14

28

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
   Case No. 05-cv-05437, 2008 WL 1901988
   (W.D. Wash. April 24, 2008) ........................................................... 25

*Gribble v. Cool Transports Inc.*,
   Case No. 06-cv-04863, 2008 WL 5281665
   (C.D. Cal. Dec. 15, 2008) ............................................................... 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................. *passim*

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. Jan. 20, 2011) ............................... *passim*

*Hopson v. Hanesbrands, Inc.*,
   Case No. 08-cv-0844, 2009 WL 928133
   (N.D. Cal. Apr. 3, 2009) ......................................................... *passim*

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   2012 U.S. Dist. LEXIS 13387 (D.N.J. Feb. 6, 2012) ....................... 12

*In re Mego Fin. Corp. Secs. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .......................................................... 31

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   267 F.R.D. 113 (D.N.J. 2010) ......................................................... 23

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1998) ........................................................... 28

*In Re Sony SXRD Rear Projection Television Class Action Litigation*,
   Case No. 06-cv-5173, 2008 WL 1956267 (S.D.N.Y. 2008) .............. 22

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
   Case No. 06-02069, 2011 WL 31266,
   (N.D. Cal. Jan. 5, 2011) ................................................................. 28

*In re Wash. Public Power Supply Sys. Secs. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................... 25, 28

*Jordan v. L.A. Cnty.*,
   669 F.2d 1311 (9th Cir. 1982) ....................................................... 18

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) .............................................. 19, 22

*Knight v. Red Door Salons, Inc.*,
   Case No. 08-cv-01520, 2009 WL 248367
   (N.D. Cal. Feb. 2, 2009) ................................................................. 31

*Long v. Hewlett-Packard Co.*,
   Case No.  06-cv-02816 JW, 2006 WL 4877691
   (N.D. Cal. Dec. 21, 2006) .............................................................. 13

*Lozano v. AT&T Wireless Services, Inc.*,
　504 F.3d 718 (9th Cir. 2007) ........................................................................ 19

*Marcus v. BMW of North America*,
　Case No. 687 F.3d 583 (3rd Cir. 2011)............................................................ 12

*Marisol v. Giuliani*,
　126 F.3d 372 (2nd Cir. 1997)........................................................................ 20

*Mullane v. C. Hanover Bank & Trust*,
　339 U.S. 306 (1950)..................................................................................... 18

*Murillo v. Pac. Gas & Elec. Co.*,
　266 F.R.D. 468 (E.D. Cal. 2010) .................................................................... 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
　221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 9

*O'Keefe v. Mercedes-Benz USA, LLC*,
　214 F.R.D. 266 (E.D. Pa. 2003)...................................................................... 22

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
　688 F.2d 615 (9th Cir. 1982) ..................................................................... 9, 12

*Parkinson v. Hyundai Motor Am.*,
　258 F.R.D. 580 (C.D. Cal. 2008) .................................................................... 22

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985)..................................................................................... 17

*Rodriguez v. Hayes*,
　591 F.3d 1105 (9th Cir. 2010) ...................................................................... 19

*Rosen v. J.M. Auto Inc.*,
　270 F.R.D. 675 ........................................................................................... 21

*Schulte v. Fifth Third Bank*,
　805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................................. 14

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
　Case No. 14-cv-20107, 2014 WL 1745050
　(S.D. Fla. Apr. 30, 2014) ........................................................................ 13, 15

*Staton v. Boeing*,
　327 F.3d 938 (9th Cir. 2003) ............................................................... 9, 25, 30

*Sullivan v. DB Investments, Inc.*,
　667 F.3d 273 (3d Cir. 2011) (en banc), cert denied,
　__U.S.__, 132 S. Ct. 1876 ........................................................................... 24

*Tait v. BSH Home Appliances Corp.*,
　289 F.R.D. 466 (C.D. Cal. 2012) .................................................................... 23

*Tatum v. Chrysler Group, LLC*,
　Case No. 10-cv-4269, 2012 WL 6026868 (D.N.J. Dec. 3, 2012)...................... 15

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ....................................................................... 28

*Williams v. MGM-Pathe Comms. Co.*,
  129 F.3d 1026 (9th Cir. 1997) ....................................................................... 29

*Wolin v. Jaguar Land Rover N. Am.*,
  617 F.3d 1168 (9th Cir. 2010) .............................................................. *passim*

*Young v. Polo Retail, LLC*,
  Case No. 02-cv-4546, 2007 WL 951821,
  (N.D. Cal. March 28, 2007) ........................................................................ 26

## STATUTES

28 U.S.C. § 1715(b) ............................................................................................ 15

## OTHER AUTHORITIES

4 NEWBERG ON CLASS ACTIONS (4th ed.) § 11.41 ................................................... 10

MANUAL FOR COMPLEX LITIGATION, § 21.632 ....................................................... 18

## RULES

FED. R. CIV. P. 23 ........................................................................................ *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Because the relief set forth in the Settlement Agreement ("Settlement") in this case is an excellent result for the Class, providing approximately two-thirds of the best-case result Plaintiffs could have expected following a successful trial, it is clearly fair, reasonable, and adequate, and the Court should grant final approval.  Plaintiffs Stacie Zakskorn and Rachelle Schreiber and Plaintiff Javier Hidalgo brought actions (the "Actions") on behalf of themselves and a putative class of current and former owners and lessees of Honda Civics that were experiencing premature front brake pad wear.  After discovery, the class was narrowed to current and former owners and lessees of 2006–2011 Honda Civics with rear drum brakes (DX and LX trims) distributed for sale or lease in the United States (including Puerto Rico, Guam, and the U.S. Virgin Islands) (the "Settlement Class Vehicles").  Plaintiffs allege that the Settlement Class Vehicles and their braking system contain one or more design and manufacturing defects that cause the front brake pads to wear out prematurely.[3]

The Settlement provides to the Settlement Class members essentially a 20,000-mile guarantee on their brake pads, or a guarantee for two-thirds of the 30,000-mile expected life alleged in the Complaint.  (Dkt. 56-1 ¶ 20.)  Especially when viewed in light of the risk that, if this case were to proceed, Plaintiffs might not prevail on their liability claims, or a class might not be certified, this represents a highly favorable result for the Class.  The Settlement features the following relief:

**Brake Pad Replacement and Reimbursement**: For any Brake Pad Replacements that occur within the 3-year/36,000-mile Warranty Period, Defendant American Honda Motor Co., Inc. ("AHM") will reimburse Out-of-Pocket Expenses incurred by Settlement Class Members for parts and labor paid for the replacement according to a graduated schedule, reflecting the percentage of the brake pads' expected life remaining at each stage.  The Settlement provides 100% reimbursement of covered expenses for brake pads replaced by 7,500 miles or less, 50%

---

[3]  Defendant American Honda Motor Co., Inc. ("AHM") has disputed this claim and maintains that the Settlement Class Vehicles functioned properly, were not defective, and that no warranties were breached or statutes violated.

for brake pads replaced between 7,501 and 15,000 miles, and 25% for brake pads replaced between 15,001 and 20,000 miles.

**A Speedy and Simple Claims Process**: To be eligible for reimbursement, a Settlement Class Member need only submit a single contemporaneous writing, such as a receipt, invoice, repair order, or bill, showing that he or she incurred an out-of-pocket expense as a result of the Brake Pad Replacement.  The Claims Period is still ongoing and will run until March 31, 2015 or 30 days after the Effective Date.  (Settlement Agreement § 1.5.)  For each approved reimbursement payment, the Claim Administrator will mail a reimbursement check to the Class Member for the full amount of the unreimbursed permissible expense within a reasonable time following the Effective Date or AHM's receipt of a Claim Form, whichever occurs later.

**Class Member Notification**: AHM has paid the entire cost of notifying Class Members of the Settlement by first class mail, processing the Claim Forms, and maintaining a website that provides Class Members with information concerning the Settlement and the claims process.

**Attorneys' Fees**: The time and expense incurred by Plaintiffs' counsel to secure the relief on behalf of the Class will be paid by AHM, separate from the benefits to the Class.

## II.    SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT

### A.  Plaintiffs' Pre-Suit Investigation

This Settlement is the product of thorough investigation and research into the nature and extent of the alleged defect.  Prior to the filing of the Actions, Class Counsel collectively devoted months to investigating the potential defect alleged in the Actions.  Specifically, to learn about the potential defect and its consequences, Class Counsel, among other things, created a webpage and fielded inquiries from prospective class members, consulted online resources and the National Highway Traffic Safety Administration ("NHTSA") website where consumers had complained about the alleged defect, reviewed AHM manuals and technical service bulletins discussing the alleged defect, reviewed federal motor vehicle regulations regarding safety standards, identified the potential defendants, and conducted research into potential causes of action and other cases where the same or similar defects were alleged.

(Caddell Decl. ¶ 29.)  These initial investigations permitted counsel to conclude that the filing of the Actions against AHM was justified.  (*Id.*)

### B.  The Litigation

#### 1.  *The Zakskorn and Hidalgo Actions*

The Zakskorn Plaintiffs filed an action against AHM on October 4, 2011 (Dkt. 1), to which AHM filed an answer on November 29, 2011 (Dkt. 9).  Plaintiff Hidalgo filed an action against AHM on November 22, 2011 (Hidalgo Dkt. 1).  The Hidalgo Action was deemed related to the Zakskorn Action and reassigned from Judge Shubb to this Court on February 14, 2012.  (Hidalgo Dkt. 15.)[4]  On July 10, 2014, the Court granted Plaintiffs' motion to file a Consolidated Complaint in the Actions.  (Dkt. 68 at 2.)

#### 2.  *The Allegations Against AHM*

The Consolidated Complaint alleges that the Settlement Class Vehicles suffer from a common design and/or manufacturing defect that causes the Class Vehicles' front brake pads to wear out prematurely and require replacement approximately every 7,500 to 15,000 miles, far more frequently than the 30,000-mile life expected in a properly functioning braking system (the "Brake Defect").  (Dkt. 56-1 ¶¶ 1, 20.)  Plaintiffs allege that although the Brake Defect is covered by Honda's New Vehicle Limited Warranty (the "Warranty"), Honda has failed to repair the Brake Defect under warranty.  (*Id.*)

Plaintiffs further allege that AHM was aware of problems with the Braking System, but failed to disclose the defect to Class Members at the time of sale or thereafter.  (*Id.* ¶ 2.)  Plaintiffs allege that AHM should now be required to pay Class Members the cost to repair the brake defect and reimburse them for premature brake pad replacements pursuant to various consumer protection laws.  (*See id.* ¶¶ 68, 76.)  Plaintiffs also seek recovery under warranty law because AHM refused to repair the alleged Brake Defect free of charge.  (*Id.* ¶¶ 86, 92.)[5]

---

[4]  Plaintiffs initially sued multiple Honda entities but by stipulation dismissed all defendants other than American Honda Motor Co., Inc.  (Dkts. 21 & 24.)

[5]  AHM has denied all factual allegations in the case and does not admit any liability by this settlement.

3.      *The Parties' Discovery and Settlement Negotiations*

The parties engaged in substantial discovery, including propounding and responding to written discovery and reviewing over 54,000 pages of documents produced by AHM in this case (e.g., technical drawings of the Braking System; owners' manuals; service and repair manuals; maintenance and warranty manuals; brochures; technical service bulletins; warranty repair invoices; warranty reimbursements; service records; vehicle population numbers for Class Vehicles equipped with the Braking System; warranty data; consumer complaint reports; test reports; quality studies; e-mails concerning the Braking System; meeting agendas and presentation documents; engineering specifications; premature pad wear countermeasure reports; and failure analysis charts. (Caddell Decl. ¶ 30.) Additionally, Class Counsel retained and consulted with three experts and took third-party discovery from Honda's brake-pad supplier; and Class Counsel presented Plaintiffs for their depositions and facilitated the inspection of Plaintiffs' vehicles. (*Id.*)

4.      *Mediation*

Throughout the litigation, the parties explored and discussed at length the factual and legal issues. In addition to multiple telephone conferences, the parties engaged in two separate mediations with experienced California mediator Maureen Summers, who has conducted numerous mediations involving claims stemming from automobile defects. During the first mediation on May 9, 2013, for which Class Counsel prepared a detailed PowerPoint presentation, the parties confined their discussions to the proposed relief to the Class, ultimately reaching an agreement on the material terms of the proposed relief to the Class that is before the Court. (Caddell Decl. ¶ 33.) Only after the parties had agreed upon the proposed relief to the Class did they engage in a second mediation on September 30, 2013, to resolve the issue of attorneys' fees, on which they were also able to reach an agreement. (*Id.*)

3.  *Preliminary Approval*

On May 2, 2014, the Court granted in part and denied in part without prejudice Plaintiffs' Motion for Preliminary Approval. (Dkt. 63.) The Court granted preliminary approval of the terms of the Settlement, certified the Class for settlement purposes, and appointed the

Representative Plaintiffs as class representatives. (*Id.* at 15.)  The Court requested additional information regarding the proposed notice plan and regarding why five firms should be appointed Class Counsel. (*Id.* at 14–15.)  Following the parties' submissions of the additional requested information, (Dkt. 65), the Court approved the proposed notice program. (Dkt. 68.) Plaintiffs also submitted additional information regarding the background of the case and the context in which Plaintiffs came to propose designation of five firms as Class Counsel. (Dkt. 64.)  In light of the fact that Class Counsel had agreed to work cooperatively—rather than pursue multiple competing class actions—and had each been involved with the case for a substantial period of time, as well as the fact that the payment of costs and fees under the Settlement would not reduce the benefits made available to the Class, the Court appointed Class Counsel, finding that they would "fairly and adequately represent the interests of the class." (Dkt. 67 at 4.)

## C. Terms of the Proposed Settlement

### 1. *The Proposed Settlement Class*

The Settlement Class consists of all residents of the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who currently own or lease, or previously owned or leased, a 2006–2011 Honda Civic with rear drum brakes (DX and LX trims) distributed for sale or lease in the United States (including Puerto Rico, Guam, and the U.S. Virgin Islands). (Settlement Agreement §§ 1.23 & 1.25.)

Excluded from the Settlement Class are AHM, AHM's employees, employees of AHM's affiliated companies, AHM's officers and directors, insurers of Settlement Class Vehicles, all entities claiming to be subrogated to the rights of Settlement Class Members, issuers of extended vehicle warranties, and any Judge to whom the Litigation is assigned. (Settlement Agreement § 1.23.)

### 2. *Brake Pad Replacement and Reimbursement After the Effective Date*

For Settlement Class Members who require a Brake Pad Replacement after the Effective Date, AHM will reimburse Out-of-Pocket Expenses incurred by Settlement Class Members for parts and labor paid for the Brake Pad Replacement according to the following

schedule, provided that the replacement occurs within the Warranty Period and is performed at an Authorized Honda Dealer:

>    (1)    For brake pads that require replacement after being used for 7,500 miles or less, AHM will reimburse 100% of the total costs of replacing the brake pads (including parts, labor, taxes, and rotor resurfacing, but not including any costs relating to replacing rotors).
>
>    (2)    For brake pads that require replacement after being used for 7,501 miles to 15,000 miles, AHM will reimburse 50% of the total costs of replacing the brake pads (including parts, labor, taxes, and rotor resurfacing, but not including any costs relating to replacing rotors).
>
>    (3)    For brake pads that require replacement after being used for 15,001 miles to 20,000 miles, AHM will reimburse 25%, of the total costs of replacing the brake pads (including parts, labor, taxes, and rotor resurfacing, but not including any costs relating to replacing rotors).

(Settlement Agreement § 4.2(a).)   Because the settlement categories are based on brake pad mileage (as opposed to odometer mileage), Class Members may be eligible for reimbursement for multiple repairs as long as they occur within the 3 years or 36,000 miles on the odometer, whichever occurs first.  (*Id.* §§ 4–5.)[6]

>    *3.   Replacements Before the Effective Date*

For Settlement Class Members who paid for a Brake Pad Replacement prior to the Effective Date, AHM will reimburse Out-of-Pocket Expenses incurred by Settlement Class Members for parts and labor paid for the Brake Pad Replacement according to same schedule, provided that the replacement occurred within the Warranty Period.   Settlement Class Members who had the Brake Pad Replacement performed before the Effective Date are not required to have had the work performed at an Authorized Honda Dealership in order to claim

---

[6] Where multiple replacements are sought, Settlement Class members may provide documentation, such as an invoice showing when the pads were originally installed and the mileage on the vehicle at the time of installation, to establish the mileage on the brake pads for which reimbursement is sought. (Settlement Agreement § 5.2(d).)

reimbursement.  (Settlement Agreement § 4.2(b).)[7]

### 4.   Required Proof for Reimbursement

To be eligible for reimbursement, Settlement Class Members must submit a Claim Form within the Claims Period, along with written proof that an Out-of-Pocket Expense was incurred by the Settlement Class Member as a result of Brake Pad Replacement.  (*Id.* § 1.19.) As proof, Settlement Class Members need only submit a single contemporaneous writing, such as receipts, invoices, and repair orders or bills, which prove the existence of Brake Pad Replacement and the amount of the Out-of-Pocket Expense.  (*Id.*)

### 5.   The Proposed Speedy and Simple Claims Process

The claims process—which is still ongoing—for seeking reimbursements is designed to be fast and convenient, and to impose minimal burdens on the Settlement Class Members.  The Claim Form requires only that a Class Member provide the minimum information necessary to verify a claim.  Likewise, Class Members need only provide the minimum proof necessary to substantiate claims.  (Settlement Agreement § 1.19).  Within a reasonable time following the Effective Date or AHM's receipt of a Claim Form from a Settlement Class Member, whichever occurs later, AHM will send payments directly to Settlement Class Members who submit valid and timely Claim Forms.  (*Id.* § 5.1.)

### 6.   The Notice to the Class of the Settlement

AHM prepared, paid for, and sent the Class Notice, in the form agreed upon by the Parties and approved by the Court, in September–October 2014.  (Settlement Administrator Decl. ¶¶ 6–7; *see* Settlement Agreement §§ 8.2 & 8.3.)  The Settlement Administrator obtained the names and most current addresses of a total of 1,688,886 Class Members, current and former owners of 940,765 Class Vehicles, from R.L. Polk & Co. ("R.L. Polk").  (Settlement Administrator Decl. ¶¶ 4–5.)  R.L. Polk used the vehicles' VIN numbers to obtain current addresses of the Settlement Class Members through the appropriate state government agencies

---

[7]  Brake Pad Replacements that are required and performed after a Settlement Class Member receives Notice but before the Effective Date will not be eligible for reimbursement unless they are performed by an Authorized Honda Dealer.  (Settlement Agreement § 4.2.)

and updated these addresses using the National Change of Address database.  (*Id.* ¶¶ 4–6.)  The Settlement Administrator then mailed a claims packet containing the Notice and Claim form to each Settlement Class Member.  (*Id.* ¶ 6 & Ex. A thereto.)  Notice packets that were returned by the U.S. Postal Service with forwarding address information were promptly re-mailed to the updated addresses.  (*Id.* ¶ 9.)

In addition, the Settlement Administrator has established and continues to maintain a website dedicated to this Settlement (www.brakepadsettlement.com) for access by Settlement Class Members.  The website contains: (a) instructions on how to obtain reimbursement of claims; (b) instructions on how to contact the Settlement Administrator, AHM, and Class Counsel; (c) downloadable copies of the Claim Form, Class Notice, Settlement Agreement, and other relevant court documents; and (d) responses to frequently asked questions relating to other information about the Settlement.  (*Id.* ¶ 8.)

### 7.  *Releases*

As part of the consideration for this Settlement Agreement, upon the Effective Date, the Representative Plaintiffs and Settlement Class Members grant AHM a standard release. (Settlement Agreement § 7.)

### 8.  *Attorneys' Fees and Expenses*

The time and expense incurred by Plaintiffs' Counsel to secure the relief on behalf of the Settlement Class will be paid by AHM, separate from the benefits to the Settlement Class. (Settlement Agreement § 12.)  Class Counsel seek attorneys' fees of $808,254.51, an amount that represents an inverse 0.75 multiplier on their adjusted lodestar of $1,076,703.30, and expenses of $41,745.49, for a the total amount of $850,000, which will continue to increase due to Class Member inquiries and necessary further work related to finalizing the Settlement.

### 9.  *Service Awards*

Separate and apart from the benefits to the Class, AHM will pay Representative Plaintiffs Stacie Zakskorn, Rachelle Schreiber, and Javier Hidalgo an amount to be approved by the Court, not to exceed $7,500 in the aggregate for all Representative Plaintiffs, on account of their time and effort expended in the Litigation.  (Settlement Agreement § 4.3.)

### III.   ARGUMENT AND AUTHORITIES

**A.  The Court Should Approve the Settlement as Fair, Reasonable, and Adequate.**

To approve a class action settlement under FED. R. CIV. P. 23(e), the Court must find that the settlement is "fair, reasonable, and adequate," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In evaluating the fairness of the Settlement, the Court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a government participant, and the reaction of the Class Members to the proposed settlement." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice*, 688 F.2d at 625.)  The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances of each case. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing *Officers for Justice*, 688 F.2d at 625).

In affirming the settlement approved by the trial court in *Class Plaintiffs*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the connected issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs*, 955 F.2d at 1291 (internal quotation and citation omitted).  Where, as here, the

1   settlement is the product of arm's length negotiations conducted by capable counsel with

2   extensive experience in complex class action litigation, the court begins its analysis with a

3   presumption that the settlement is fair and should be approved.  *See* 4 NEWBERG ON CLASS

4   ACTIONS (4th ed.) § 11.41.

5          As discussed in greater detail below, the Settlement presented here is an excellent result

6   for the class and is entitled to a presumption of fairness.  First, the settlement was reached only

7   after extensive arm's-length negotiations and with the supervision and assistance of Maureen

8   Summers, an experienced and respected mediator.  (*See* Caddell Decl. ¶ 33.)  Thus, there is no

9   indication of collusion.  Second, Class Counsel and counsel for Honda are highly experienced in

10  class action litigation, acted in good faith, and represented their clients' best interests in reaching

11  the Settlement.  (*Id.*)  Finally, the Settlement is a very favorable result for Settlement Class

12  members, representing approximately two-thirds of what they could hope to recover in a best-

13  case scenario at trial, but without the risk and delay that would accompany further prosecution of

14  this case. (*Id.* ¶ 36.)  All of the *Class Plaintiffs* factors favor approval, as shown below.

15      *1. The Strength of Plaintiffs' Case*

16         While Plaintiffs believe strongly in their claim, Honda has vigorously denied liability and

17  asserted numerous defenses, including that no defect exists, that any defect in the design of the

18  brake system is not covered by the Warranty, which only covers defects in materials and

19  workmanship, and that brake pads are "wear" parts that necessarily require regular replacement

20  and are specifically excluded from the Warranty.  (*See* Dkt. 30 ¶¶ 1, 23, 89–125.)  In addition,

21  because the speed with which brake pads wear can also be affected by the manner in which the

22  vehicle is driven, plaintiffs would have faced significant, individual causation issues.  (*See*

23  Dkt. 30 ¶¶ 108–110.)  Finally, Honda denied that it failed to disclose material facts, taking the

24  position that it was not aware of any problem with the braking system and that no such problem

25  exists.  (Dkt. 30 ¶ 27.)  The relief offered by the Settlement is even more attractive when viewed

26  against the risk that Honda might prevail on these affirmative defenses.  *See Browne v. Am.*

27  *Honda Motor Co., Inc.*, No. 09-cv-06750, 2010 WL 9499072 at *10 (C.D. Cal. July 29, 2010)

28  (holding that strength-of-case factor favored settlement approval in light of affirmative defenses,

including causation issues and that brake pads are not covered by warranty); *see also Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) (affirming judgment of dismissal of express warranty, unfair competition, and CLRA claims on demurrer, based on an alleged defect that reduced the life span of the vehicle's engine, but did not cause the automobile to malfunction during the warranty period).  This factor therefore weighs in favor of approval of the Settlement.

### 2.  *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

Any case against a major automotive manufacturer alleging a defect in hundreds of thousands of vehicles will consume significant amounts of the Court's and the parties' resources. *Browne*, 2010 WL 9499072 at *11 ("Because of the technical complexity of the issues central to plaintiffs' claims, both discovery and trial would have consumed significant time.")  In addition, if the case were to proceed, Plaintiffs would likely need to expend significant sums in working with their multiple experts, developing further evidence to, *inter alia*, (1) address the question of whether the alleged Braking Defect presents safety concerns; (2) answer whether Settlement Class Vehicles' braking system components are more likely to malfunction than other comparable parts; (3) ascertain consumer expectations, and (4) quantify damages—all resulting in significant additional expense and time.  *See Aarons v. BMW of North America, LLC*, Case No. 11-cv-7667, 2014 WL 4090564 at *10 (C.D. Cal. Apr. 29, 2014) (holding that where case would likely depend on "inherently risky" battle of experts over the existence of a safety-related defect and causation, risks of continued litigation favored settlement approval).  This factor thus also supports Settlement approval.

### 3.  *The Risk of Maintaining Class Action Status Throughout the Trial*

While Plaintiffs believe, as explained below, (*see infra* Section III.C), that class certification would be appropriate for litigation purposes, there is a risk that a class might not be certified or that class action status might not be maintained through trial, as shown by recent decisions denying class certification in automobile defect cases.  *See Edwards v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 81330 (S.D. Cal. June 12, 2012; *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,

2012 U.S. Dist. LEXIS 13387 (D.N.J. Feb. 6, 2012).  For example, Honda has argued that individualized driving patterns can affect brake wear such as that experienced by Class Members.  *See Browne*, 2010 WL 9499072 at *11 (holding that risk of maintaining class certification favored settlement approval in light of similar potential defense to class certification).  Plaintiffs' counsel appreciates that there is some risk that manageability issues could prevent class certification or require modification or decertification of the Class before trial.  *See, e.g., Marcus v. BMW of North America*, Case No. 687 F.3d 583 (3rd Cir. 2011) (Third Circuit reversed certification of consumer class action case involving BMW vehicles equipped with allegedly defective run flat tires); (Caddell Decl. ¶ 37.)  This factor thus also favors approval.

### 4.   The Amount Offered in Settlement

"Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624.  Because of this need for compromise and the policy favoring settlement, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id.* at 625.  Instead, "[e]stimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years).  *Browne*, 2010 WL 9499072 at *12.

The proposed Settlement in this case is an excellent result—well within the range of reasonableness—and easily merits judicial approval.  Plaintiffs allege that "[i]n properly functioning braking systems, front brake pads typically last for 30,000 miles or more."  (Dkt. 56-1 ¶ 20.)  The Settlement provides reimbursement for brake pads replaced at up to 20,000 miles, or two-thirds of the total mileage sought by Plaintiffs.  (Settlement Agreement § 4.2; *see also* Dkt. 56-1 ¶ 20.)  The average cost to replace the front brake pads on a Class Vehicle is approximately $115, and the Settlement provides for reimbursement of 100% of this expense up to 7,500 miles, 50% up to 15,000 miles, and 25% up to 20,000 miles (Settlement Agreement § 4.2; Declaration of Brian Newman, attached as Ex. 9 ("Newman Decl") ¶ 6.)  Also, unlike in *Browne*, there is *no* cap to the total amount that AHM will reimburse.  *Cf. Browne*, 2010 WL

9499072 at *4 (capping reimbursements at $150 for replacements with new material brake pads or 50% of $125 for replacements performed in the past).

The graduated reimbursement schedule is appropriate because the reimbursement percentages reflect the proportion of expected use that Class Members have already received from their brake pads at the time of replacement. *See Browne*, 2010 WL 9499072 at *12 (explaining that "[b]ecause class members received approximately half the use they expected from their brake pads, a 50% reimbursement puts them in the same or a more favorable position as an owner whose brake pads did not wear prematurely").[8]   The 20,000-mile cutoff is a negotiated limit, reflecting a compromise between Plaintiffs' allegation that the brake pads should last 30,000 miles and Honda's position that the braking system is not defective and that premature brake pad replacements are solely the result of individual driving conditions or driving habits.  Indeed, it is a highly favorable result for the Class, as it represents approximately 2/3 of what Plaintiffs would have received had they been completely successful on their claims at trial and prevailed on any and all appeals. *See Hopson v. Hanesbrands, Inc.*, Case No. 08-cv-0844, 2009 WL 928133 at *7 (N.D. Cal. Apr. 3, 2009) (holding that settlement represented a "reasonable compromise" where plaintiffs' recovery represented "approximately 30% of the maximum expected lost wages and penalties should Plaintiffs prevail"); *Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068, 2007 WL 221862 at *5 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (approving settlement where "amount of the settlement constituted

---

[8]  Given that brake pads are a wear part, not covered by the Warranty, and whose expected life is only approximately 30,000 miles (Dkt. 56-1 ¶ 20), as well as the obstacles to recovery following the expiration of the Warranty, Plaintiffs were not able to negotiate compensation for post-Warranty replacement of the brake pads. *See Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006); *Long v. Hewlett-Packard Co.*, No. 06-cv-02816 JW, 2006 WL 4877691, at *5 (N.D. Cal. Dec. 21, 2006) (granting motion to dismiss claims for defects that manifested after the manufacturer's express warranty had expired); *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-cv-20107, 2014 WL 1745050, at *4 (S.D. Fla. Apr. 30, 2014) (dismissing claims where "plaintiff was not charged for the brake pad and rotor replacement within the 12–months/12,000 mile parameters of the Warranty applicable to brake parts").  This limitation on Plaintiffs' recovery is comparable to the results achieved in similar approved settlements.  *See, e.g.*, *Browne*, 2010 WL 9499072 at *4 (providing that [t]o be eligible for reimbursement, class members must replace their rear brake pads with the new material pads within three years of the date they purchased or leased the vehicle or within ninety days of the date of final approval of the settlement, whichever is later"); *id.* at *18 (finding this limitation appropriate because it "ensures that the class's legal claims fall within Honda's 3-year/36,000-mile warranty period").

approximately 25 to 35% of the amount of damages plaintiffs could have hoped to prove at trial").

Unlike the *Browne* case, which concerned rear brake pads, and where the plaintiffs had alleged that the brake pads typically lasted 70,000 miles or more,[9] this case concerns front brake pads, which tend to wear faster because the weight of the vehicle shifts forward during braking, putting additional stress on the front brake pads.  (Dkt. 56-1 ¶ 20 (alleging only front brake pad wear); *cf. Browne*, 2010 WL 9499072 at *1 ("Plaintiffs' complaint alleges that the braking system used in the class vehicles suffers from a defect that causes excessive force to be applied to the vehicles' rear wheels.")  The 20,000 mile cap is thus a fair compromise and an excellent result for the Class.  In addition, the Settlement is highly favorable because Class Members will receive these benefits now, rather than having to await the uncertain outcome of a trial and any appeals.  *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) ("A major benefit of the settlement is that Class Members may obtain these benefits much more quickly than had the parties not settled.")

In addition to the fact that class action proceedings for relatively small-value claims such as these are superior and that individual reported verdicts in such cases are rare, this recovery compares very favorably with recoveries approved in similar class settlements.  *See Browne*, 2010 WL 9499072 at *4 (approving settlement providing for 50% of historical brake-pad replacement cost up to a cap of $125); *see also Aarons*, 2014 WL 4090564 at *3 (approving schedule of graduated reimbursements for transmission repair, with the percentage of expense reimbursed varying according to the age and mileage of the vehicle at the time of the repair). Indeed, some class actions involving allegedly defective braking systems never resulted in settlements at all, but were dismissed at the pleading stage for failure to state a claim.  *See Speier-Roche*, Case No. 14-cv-20107, 2014 WL 1745050, at *4 (S.D. FL. Apr. 30, 2014); (dismissing breach of warranty claims related to allegedly defective braking system in Audi

---

[9]   *Browne*, 2010 WL 9499072 at *1 n.9 (noting that plaintiffs had alleged that brake pads typically last 70,000 miles or more but that at the time of final approval, their investigation had revealed that Honda brake pads on non-class vehicles typically last 30,000 miles or more).

automobiles); *Tatum v. Chrysler Group*, *LLC*, No. 10-cv-4269, 2012 WL 6026868 (D.N.J. Dec. 3, 2012) (dismissing plaintiffs' claims related to allegedly defective braking system in Chrysler automobiles).  This Settlement, in contrast, provides to Class Members approximately two-thirds of the maximum recovery they could have expected to receive in a best-case scenario at trial, but without the risks or delay associated with trial or any subsequent appeal.  This factor therefore also supports approval.

### 5. The Extent of Discovery Completed and the Stage of the Proceedings

As described in more detail below, (*see infra* Section III.D.1.), the parties engaged in extensive discovery over the merits and value of Plaintiffs' claims and Defendants' defenses.  In addition to their own independent investigations, Class Counsel reviewed voluminous quantities of evidence produced during the course of discovery and settlement discussions and retained highly qualified experts.  Moreover, Defendants took the depositions of Plaintiffs and inspected their vehicles.  (Caddell Decl. ¶ 30.)  This process provided the parties with a well-developed record on which to evaluate the relative strength of Plaintiffs' claims and Honda's defenses for settlement purposes, favoring settlement approval.  *See Browne*, 2010 WL 9499072 at *14 (finding that this factor favored approval where counsel had engaged in significant investigation and written discovery, giving them "sufficient information to make an informed decision about the adequacy of the settlement").

### 6. The Experience and Views of Counsel

The Settlement was negotiated at arm's length by counsel well-versed in class litigation, particularly with respect to automotive defect issues. In addition, Maureen Summers, an experienced mediator, presided over the mediations that led to the Settlement.  (Caddell Decl. ¶ 33.)   Class Counsel believe that the Settlement is an excellent result for the class. (Caddell Decl. ¶¶ 36–39.)  The Settlement is therefore entitled preliminarily to "a presumption of fairness."  *Gribble v. Cool Transports Inc.*, No. 06-cv-04863, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008).

### 7.   The Presence of a Governmental Participant

The parties have notified the Attorney General of the United States and the Attorneys General of all 50 states of this Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).  (Newman Decl. ¶¶ 2–4 & Ex. B thereto.)  No Attorney General has sought to intervene or objected to the Settlement.  (*Id.* ¶ 5); *see Aarons*, 2014 WL 4090564 at *13 (observing that notice of settlement was provided to federal and state governmental officials, and none objected).

### 8.   The Reaction of Class Members to the Proposed Settlement

The reaction of Class Members to the proposed settlement has been positive.  So far, 13,165 Class Members have submitted claims, and additional claims are expected, with the Claims Period continuing to run until March 31, 2015 or 30 days after the Effective Date. (Settlement Agreement § 1.5; Settlement Administrator Decl. ¶ 13.)  While the deadline for objections will not be reached until January 21, 2014, so far only eight Class Members have filed objections with the Court.  (Dkts. 69, 71–76.)  Plaintiffs will respond to these objections in detail, along with any other objections received before the deadline, in their Response to Objections, to be filed February 4, 2015.  It is worth noting, however, that the objections made so far, in general, merely express a wish that the settlement could have been even more advantageous.  (*See, e.g.*, Dkts. 74–76.)  A settlement, however, is necessarily a compromise, taking into account the risks of continued litigation.  *See Hopson*, 2009 WL 928133 at *7.

In any case, the fact that only eight Class Members, or less than 0.0005%, of the class, have objected shows that overall the Class Members strongly support the Settlement.  *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Browne*, 2010 WL 9499072 at *14–15 ("The comparatively low number of opt-outs and objectors indicates that generally, class members favor the proposed settlement and find it fair."); *Aarons*, 2014 WL 4090564 at *14 (holding that where number of claims far exceeded number of opt-outs and objections, "[t]his highly positive response to the settlement strongly suggests that the Class finds the settlement to be fair, reasonable, and adequate.")

Given the favorable terms of the Settlement and the rigorous manner in which these terms were negotiated, the proposed Settlement is a fair, reasonable, and adequate compromise of the issues in dispute.  This Court should therefore approve the Settlement.

**B. The Court-Ordered Notice Program Meets Due Process Standards and Has Been Fully Implemented.**

Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  *Id.*; *see Hanlon*, 150 F.3d at 1026.

Notice here squarely met these requirements.   Honda contracted with Polk, which specializes in identifying vehicle owners and lessees, to identify all current and former owners and lessees of Settlement Class Vehicles.  (Settlement Administrator Decl. ¶ 4.)   Honda then mailed each Class Member an individual notice of the proposed settlement along with a claim form. *See Mullane v. C. Hanover Bank & Trust*, 339 U.S. 306, 314–18 (1950) (explaining that notice by first class mail will generally be the "best practicable notice").  The form of the notice mailed contained all of the content required by Rule 23(c)(2)(B), including a definition of the Settlement Class, a description of the action and the claims; notice of the Settlement Class members' right to opt out of the proposed settlement; and notice of their right to object to or comment on the settlement and any application for attorneys' fees, costs, and service awards. (Ex. A to Settlement Administrator Decl.)   Adequate notice has therefore been provided. *Hanlon*, 150 F.3d at 1011 (holding notice requirements met where the notice provided class members "with the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery").

**C. Class Certification is Appropriate for Settlement Purposes.**

Before granting approval of the Settlement, the Court should determine that the proposed Settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*,

521 U.S. 591, 622 (1997); MANUAL FOR COMPLEX LITIGATION, § 21.632.  An analysis of the requirements of Rule 23(a) and 23(b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.  *See* FED. R. CIV. P. 23(a); *Hanlon*, 150 F.3d at 1019.

      1.  *The Proposed Class is Sufficiently Numerous and Ascertainable.*

      The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  Although there is no absolute numerical threshold for numerosity, courts have approved classes consisting of thirty-nine, sixty-four, and seventy-one plaintiffs.  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982).)  That requirement is easily met here.  The proposed Settlement Class numbers 1,688,866 people.  (Settlement Administrator Decl. ¶ 5; *see* Settlement Agreement §§ 1.23 & 1.25.)

      2.  *There Are Questions of Law and Fact Common to the Class.*

      The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal.'"  *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236, at *25 (N.D. Cal. 2010) (quoting *Hanlon*, 150 F.3d at 1019–20).

      Here, each Class Member purchased or leased a Honda Civic vehicle equipped with an allegedly defective rear-drum braking system.  The class has been defined to include Class Vehicles that all have the same braking system.  (Dkt. 56-1 ¶ 44.)  In addition, all of the Class Vehicles are covered by the same Warranty.  (*Id.* ¶ 19.)  AHM contends that the braking system is not defective and performs appropriately under normal driving conditions and that Plaintiffs' claims are not covered by the Warranty.  It follows that the principal common questions of law and fact a trier of fact would need to resolve include whether the Settlement Class Vehicles have defective brake parts, and if so, whether AHM had an obligation to apprise consumers of the defect and/or to repair the defect under the Warranty.

The Ninth Circuit and district courts within this Circuit have repeatedly held that automobile defect cases like this one satisfy Rule 23's commonality requirement for class certification. *See*, *e.g.*, *Hanlon*, 150 F.3d at 1020 (allegedly defective rear liftgate latches); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 524 (C.D. Cal. 2012) (finding commonality requirement met in case involving allegedly defective suspension system); *Browne*, 2010 WL 9499072 at *1 (allegedly defective braking system); *see also Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010) (reversing denial of class certification where "[t]he claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model.")

> 3. *Plaintiffs' Claims are Typical of the Proposed Settlement Class.*

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff. *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)); *see also Wolin*, 617 F.3d at 1174–75 (finding typicality where plaintiffs and the class sought to recover pursuant to the same legal theories: violation of consumer protection laws, breach of warranty, and unjust enrichment).

Here, Class Members' claims arising from the braking system share numerous common issues with the legal claims asserted by the named Plaintiffs. Each Class Member's claim arises from the same underlying conduct—namely, AHM's alleged concealment of an inherent defect in the braking system installed in the Class Vehicles and failure to repair it during the warranty period. In addition, Class Members have similar interests in the remedies being

provided by the proposed Settlement, which include reimbursements for brake pad repair and replacement.

> 4.   *Plaintiffs and Class Counsel Will Adequately Represent the Interests of the Settlement Class.*

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  This requirement is satisfied if:  (1) the proposed representative Plaintiffs and their counsel do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel.  *Hanlon*, 150 F.3d at 1020.

Here, none of the proposed representative Plaintiffs has individual interests in this litigation that conflict with the best interests of the class.  To the contrary, each named Plaintiff, as well as each Class Member, has a common interest in obtaining reimbursement from AHM as a result of its alleged concealment of the Class Vehicles' defective braking system.  In addition, the named Plaintiffs are represented by qualified and competent counsel well-versed in prosecuting automotive class actions.  Each of the firms making up Class Counsel has submitted declarations amply establishing its adequacy.  (*See* Caddell Decl. ¶¶ 3–26; Shahian Decl. ¶¶ 2–8; Starr Decl. ¶¶ 2–3; Mendelsohn Decl. ¶¶ 3–4 & Ex. A thereto; Ex. A to Fisher Decl.)  As the Court previously found in appointing Class Counsel, each of these firms is "capable of adequately representing the class."  (Dkt. 63 at 14; Dkt. 67 at 3.)  Rather than proceed with competing class actions, Class Counsel agreed to work together cooperatively on behalf of the Class.  (Dkt. 64 at 1–2.)  Because the firms have agreed to work cooperatively, have each been involved with the case for a substantial period of time, and have taken measures to ensure that the counsel team works efficiently without unnecessary duplication of effort, Class Counsel's representation serves the interests of, and adequately represents, the Class.  (*See* Dkt. 67 at 4; Caddell Decl. ¶ 32.)

> 5.   *Common Issues Predominate Over Individual Issues.*

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under FED. R. CIV. P. 23(b)(1), (2)

or (3)." *Hanlon*, 150 F.3d at 1022.  Here, the proposed class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy.  *Id.* (citing FED. R. CIV. P. 23(b)(3)).

Class Members' claims depend primarily on whether the Settlement Class Vehicles suffer from an inherent braking system defect and whether Defendants were obligated to cover repairs and replacements related to this claimed defect under the express warranty, and thus raise just the sort of predominantly common questions courts have found to justify class treatment.  In *Wolin*, the Ninth Circuit held that where class members all seek damages related to the same alleged defect, class certification is appropriate because common liability issues predominate.  *Wolin*, 617 F.3d at 1174 (holding that class certification was proper where "all of the proposed class members allege that their vehicles suffer from the same defect"); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. at 681–82 (certifying implied and express warranty claims where "critical issue of whether the [airbag system] in 2007 Lexus ES 350s was defective is common to all putative class members," and "this issue predominates over the individual issues").

In addition, common issues predominate here, as in *Wolin*, because liability will turn on whether Honda breached the terms of its Warranty:

> [A]ll of the proposed class members here are covered by a Limited Warranty that provides for the repair or replacement of defects, and all of the proposed class members allege that their vehicles suffer from the same defect.  These claims require common proof of the existence of the defect and a determination whether Land Rover violated the terms of its Limited Warranty.  Accordingly, we conclude that common issues predominate regarding Land Rover's obligations under its Limited Warranty.

*Id.*; *see also In Re Sony SXRD Rear Projection Television Class Action Litigation*, Case No. 06-cv-5173, 2008 WL 1956267 (S.D.N.Y. 2008) (holding that class treatment of a nationwide product defect is proper for settlement purposes because allegations regarding Sony's violations of, *inter alia*, the various states express and implied warranties subject to the same generalized proof); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 288–91 (E.D. Pa. 2003) (holding that plaintiffs satisfied predominance inquiry where they alleged, among other things, MBUSA

breached express and implied warranties as a result of using conventional motor oil at FSS intervals); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (certifying express warranty claim based on allegedly defective throttle body assembly because, *inter alia*, common questions predominate as to existence of defect, reduction of vehicles' value due to defect, and whether express warranty covers latent defect).

To the extent that some individual issues may exist regarding the amount of individual Class Members' damages, these matters can be easily managed and do not defeat predominance. *See Aarons*, 2014 WL 4090564 at *9 (holding that "[a]lthough individual damages will vary, '[t]he amount of damages is *invariably* an individual question and does not defeat class action treatment'") (emphasis in original) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).    In addition, any minor differences in Class Members' state-law claims do not predominate over the key, overarching liability issues regarding whether the braking system was defective.  *See Keegan*, 284 F.R.D. at 532–34 (concluding that plaintiffs, in an action alleging a suspension defect that caused premature tire wear, had satisfied the predominance requirement with respect to their CLRA and UCL claims); *Browne v. American Honda Motor Co., Inc.*, Case No. 09-cv-06750, 2010 WL 9499073, at *11 (C.D. Cal. Oct. 5, 2010) (certifying CLRA and UCL claims in the context of nationwide settlement involving defective braking system); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008) (certifying CLRA and UCL claims of a nationwide class of vehicle owners); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 478 (C.D. Cal. 2012) (holding that similar common questions predominated as to plaintiffs' claims that washers were defective, and thus certifying consumer class action under CLRA and UCL); *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 159 (D.N.J. 2010) (certifying consumer fraud claims of a nationwide class of vehicle owners).   Because common questions predominate here, Rule 23(b)(3) is satisfied.

> 6.    *Class Settlement is Superior to Other Available Means of Resolution.*

Similarly, there can be little doubt that resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits.  "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of

separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."  *Hanlon*, 150 F.3d at 1023; *see also Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, [would be] an inferior method of adjudication.").   Indeed, the terms of the Settlement negotiated on behalf of the class underscore the advantages of a collective bargaining and resolution process.

Addressing the allegations of an inherent defect in the design of the braking system through a class action is superior to individual litigation or any alternative methods that may exist.  The average cost to replace a front brake pad is only approximately $115, (Newman Decl. ¶ 6), not nearly enough to incentivize individual actions.  *See e.g., Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").   The funds required to marshal the type of evidence, including extensive expert testimony, that would be necessary to pursue claims against a well-represented corporate defendant would also make individual lawsuits impractical.

The superiority of proceeding through the class action mechanism, on the other hand, is demonstrable.  By aggregating Class Members' claims, Plaintiffs' counsel have been able to expend the resources necessary to conduct discovery of the alleged braking system defect and negotiate a Settlement with AHM that, if approved, will provide Class Members with reimbursements for their repair and replacement costs.

Finally, to the extent that choice of law issues would have presented manageability concerns in the litigation context, the proposed Settlement renders those concerns irrelevant.  As the Supreme Court has observed, manageability at trial is not a concern in the class action

settlement context, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Indeed, relying heavily on *Amchem*, an *en banc* panel of the Third Circuit, reviewing a nationwide class certification of consumer claims in the settlement context, recently held that Rule 23's predominance requirement did not preclude nationwide settlement-only class certification of claims brought under the consumer protection laws of all 50 states. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) (en banc), cert denied, __U.S.__, 132 S. Ct. 1876 (observing that nationwide classes are appropriate in the settlement context to facilitate all parties' interest in "achieving a global peace"). Under the same guiding principles, the Ninth Circuit has similarly upheld settlement-only class certification in nationwide settlements. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (finding predominance met for purpose of certifying a nationwide vehicle defect settlement class applying each individual state's consumer protections laws because "although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification").

As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class is appropriate.

**D. The Court Should Award the Requested Attorneys' Fees.**

Plaintiffs request an award of attorneys' fees and costs of $850,000, consisting of reimbursement of $41,745.49 in expenses and $808,254.51 in attorneys' fees. Plaintiffs' fee request represents less than Class Counsel's adjusted lodestar, or an "inverse" 0.75 multiplier on the time and effort that Class Counsel have invested in achieving this excellent result for the Class. Because this amount is reasonable and well within Ninth Circuit standards, this Court should award the requested attorneys' fees.

*1. The Requested Fee Is Reasonable According to Lodestar Principles.*

Awards of attorneys' fees are guided by the principle that fee awards should be "reasonable under the circumstances." *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994). Courts awarding fees in class-action settlements in the Ninth

Circuit have discretion to use either the lodestar or the percentage of common fund approach. *See id.* (holding that district court did not abuse discretion in choosing lodestar method).  While the percentage method may be preferred for its ease of application in cases involving a capped common fund, the lodestar approach is the most straightforward here, because the settlement structure places no cap on Honda's total liability. *Hanlon*, 150 F.3d at 1029 (affirming choice of lodestar method where calculation of value of common fund was uncertain); *Grays Harbor Adventist Christian School v. Carrier Corp.*, No. 05-cv-05437, 2008 WL 1901988 (W.D. Wash. April 24, 2008) (holding that where "[s]ettlement relief will be paid on a claims-made basis with no cap to the relief available, consideration of attorneys' fees lends itself more readily to the lodestar method").

### a.   Class Counsel's hourly rates are reasonable.

Courts calculate the lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Staton*, 327 F.3d at 965.  "A reasonable hourly rate is determined pursuant to the prevailing market rates in the relevant community." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011).  Plaintiffs here request that the Court award fees based on Class Counsel's current hourly rates, which reflect the market value of their skill and experience.  (Caddell Decl. ¶ 43; Mendelsohn Decl. ¶ 8; Shahian Decl. ¶¶ 14–16; Starr Decl. ¶¶ 5–9; Fischer Decl. ¶¶ 18–19 & Exs. D–K thereto; *see Young v. Polo Retail, LLC*, No. 02-cv-4546, 2007 WL 951821, at *6 (N.D. Cal. March 28, 2007) (holding that using current hourly rates "simplifies the calculation and accounts for the time value of money in that counsel has not been paid contemporaneously with their work in this case").  In addition, Class Counsel's declarations submitted in support of this motion show that the specific rates charged by each firm have been approved in other cases and are comparable to rates charged for similar legal work in California and approved by other district courts in class action litigation.  (Caddell Decl. ¶¶ 45–47; Mendelsohn Decl. ¶ 8; Shahian Decl. ¶¶ 14–16; Starr Decl. ¶¶ 5–9; Fisher Decl. ¶¶ 18–19 & Exs. D–K thereto); *see*  Jennifer Smith, *Biggest Lawyers Grab Fee Bounty*, Wall Street Journal, April 15, 2011, attached as Ex. D to Fisher Decl., (finding that at Skadden, Arps, Slate, Meagher & Flom LLP, the top disclosed partner billing rate was $1,095 and the lowest disclosed partner

rate was $790.00); Vanessa O'Connell, *Big Law's $1,000-Plus an Hour Club*,[10] Wall Street Journal, Feb. 23, 2011 (finding that more than 120 lawyers for whom information was available had hourly rates exceeding $1,000); *see also Aarons*, 2014 WL 4090564 at *16 (approving rates ranging from $400–$775/hour for partners and $240–$595 for associates); *Browne*, 2010 WL 9499073 at *6 (approving rates ranging from $545–$675 for partners and $380–480 for associates); *Hartless*, 273 F.R.D. at 644 (holding that rates were reasonable where they were similar to those charged in the community and approved by other courts).

**b. The submitted hours are reasonable.**

With this motion, Class Counsel submit evidence of the hours reasonably expended in this litigation.  (Caddell Decl. ¶ 4 & Ex. C thereto; Mendelsohn Decl. ¶¶ 8–9 & Ex. C thereto; Shahian Decl. ¶ 10; Starr Decl. ¶ 4 & Ex. A thereto; Fisher Decl. ¶ 16 & Ex. B thereto.)  Class Counsel have undertaken significant amounts of work to achieve success for the Class in this complex, nationwide class action.  (Caddell Decl. ¶¶ 29–31.)  Discovery in this case has been extensive, including months of pre-suit investigation, depositions of the three Representative Plaintiffs, multiple vehicle inspections, and review of over 54,000 pages of documents produced by Honda.  (*Id.* ¶¶ 29–30; Fisher Decl. ¶ 5.)  Class Counsel also retained and consulted with three expert witness consultants and worked at length with these experts to develop factual support for their liability and damage claims.  (Caddell Decl. ¶ 30; Fisher Decl. ¶ 8.)  Finally, Class Counsel carefully prepared for two mediations and engaged in significant continued negotiations with Defense Counsel in order to successfully resolve this litigation.  (Caddell Decl. ¶ 33; Fisher Decl. ¶ 10.)  Given the high stakes and the complex, contentious nature of the legal matters at issue, prosecuting this action on behalf of the class demanded high levels of effort and skill from Class Counsel.

Importantly, Class Counsel agreed to work together cooperatively rather than pursue competing class actions.  (Dkt. 64 at 1–2.)  To achieve appropriate efficiencies, Class Counsel divided responsibility among the firms representing the Class.  (Caddell Decl. ¶ 32.)  Typically, a

---

[10] *Available at* http://online.wsj.com/article/SB10001424052748704071304576160362028728234.html

single firm undertook primary responsibility for each pleading, deposition, or document-review task, with other team members being careful to review pleadings, consult regarding strategic decisions, and remain apprised of relevant matters. *Id.* This procedure was aimed at eliminating unnecessary duplication of effort while ensuring excellent work product for the Class. (*Id.*)

Class Counsel also attended a scheduling conference on behalf of the class, engaged in third-party discovery, and carefully prepared for and attended two formal mediation sessions in order to achieve a resolution of this matter. (*Id.* ¶ 31; Fisher Decl. ¶¶ 7, 10.) And Class Counsel's work will continue, as counsel will prepare responses to objections to submit on February 4, 2015, continue to respond to inquiries from Class Members, and handle any appeals from final approval. (Caddell Decl. ¶ 31.) For work performed up to January 6, 2013, based on the contemporaneous time records kept by Class Counsel and summarized by category in the attached declarations, Class Counsel's cumulative base lodestar is $1,196,337. (Caddell Decl. ¶ 41 and Ex. C thereto; Mendelsohn Decl. ¶¶ 8–9 & Ex. C thereto; Shahian Decl. ¶ 10; Starr Decl. ¶ 4 & Ex. A thereto; Fisher Decl. ¶ 16 & Ex. B thereto). In an abundance of caution, and given that the Court may harbor some concern that a duplication of effort may have occurred given the number of firms involved, Class Counsel has voluntarily reduced their lodestar by 10%, to $1,076,703.30. (Caddell Decl. ¶ 49.) This reduction, however, still results in an 0.75 inverse multiplier. (*Id.*); *see Aarons*, 2014 WL 4090564 at *17 (approving 10% unilateral reduction in lodestar to account for potential duplication of effort where 11 different firms were involved in case).

### 2. The Requested Fee is Reasonable in Light of the Risk Counsel Faced in Undertaking This Litigation and the Results Achieved.

The requested fee of $808,254.51 actually represents *less* than Class Counsel's lodestar, an 0.75 inverse multiplier, and it is more than amply justified by the risk of non-recovery that counsel faced at the outset of this litigation and the excellent result achieved for the Class. *See In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d at 1299 (holding that a multiplier is appropriate "to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases"). Courts in the Ninth Circuit

regularly approve risk multipliers in the range of one to four times the lodestar. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (approving multiplier of 3.65); *Chu v. Wells Fargo Investments, LLC*, No. 06-cv-7924, 2011 WL 672645 at *5 (N.D. Cal. Feb. 16, 2011) (approving 1.467 multiplier as "within the reasonable range of approved multipliers"); *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, Case No. 06-02069, 2011 WL 31266, at *7 (N.D. Cal. Jan. 5, 2011) (approving 1.4 multiplier as "warranted in view of the results counsel achieved for the class"); *Browne*, 2010 WL 9499073 at *12 (approving 1.5 multiplier in light of risk undertaken and result achieved); *Hopson*, 2009 WL 928133, at *12 ("'[Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied'") (quoting *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 341 (3d Cir. 1998).)

Any contingent fee class action bears a risk of non-recovery. *In re Washington Public Power Supply*, 19 F.3d at 1299 (explaining that without risk multipliers, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing"). Here, the requested fee is thus more than justified in light of the risk counsel undertook in pursuing this case and the result achieved. *Id.* at 1302; *see Hartless*, 273 F.R.D. 630.

There is no cap to Honda's liability in the Settlement, and Class Members who submit claims will receive compensation for the lost expected life on their brake pads up to 20,000 miles, or 2/3 of the 30,000 mile expected life alleged in Plaintiffs' Complaint.  (Dkt. 56-1 ¶ 20.) (*See supra* Section III.A.4.)  This represents an excellent result for the Class—approximately two-thirds of what they would recover if they prevailed completely at trial and were successful on any and all appeals.[11]  In addition, the benefit created for the Class includes the $850,000 in attorneys' fees and expenses and the notice and administration costs that Honda has agreed to

---

[11]   To date, the Settlement Administrator has already received 13,165 claim forms, with the Claims Period continuing to run until March 31, 2015 or 30 days after the Effective Date.  (Settlement Agreement § 1.5.)  The value of the Settlement includes all of the relief made available to the class, not only the consideration provided to Class Members who actually file claims. *See Williams v. MGM-Pathe Comms. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that attorneys' fees must be based on the entire fund made available for the class, even if some class members make no claims against the fund).

bear. *See Hartless*, 273 F.R.D. at 645 (holding that settlement fund for purposes of percentage fee calculation "includes notice and administration costs and separately paid attorneys' fees and costs"). In addition, the requested fee is modest in comparison to the fees approved in similar cases. *See, e.g.*, *Browne*, 2010 WL 9499072 at *12 (holding that $2 million award of attorneys' fees, representing a 1.5 multiplier of counsel's lodestar, and costs was reasonable in case involving Honda braking system); *Aarons*, 2014 WL 4090564 at *18 (approving attorneys' fees of over $1.8 million, or 93.6% of counsel's lodestar, in transmission-defect class action). The Court should therefore approve the requested fee award. *Browning v. Yahoo! Inc.*, Case No. 04-cv-01463, 2007 WL 4105971 at *14 (N.D. Cal. Nov. 16, 2007) (approving lodestar fee where fee was reasonable in light of benefit to the class).

**E.  The Court Should Award the Requested Expenses.**

Class Counsel kept records of their expenses on a contemporaneous basis, including expenses for filings, depositions, expert witness fees, printing and copying, travel, meals, witness expenses, postage and shipping, computerized research, staff overtime, long-distance telephone charges, and other expenses reasonably incurred in litigating this action on behalf of the Class. (Caddell Decl. ¶ 42 and Ex. D thereto; Mendelsohn Decl. ¶ 10; Shahian Decl. ¶ 17; Starr Decl. ¶ 10; Fisher Decl. ¶ 17 & Ex. C thereto.) Plaintiffs' Counsel established a litigation fund, to which all Plaintiffs' Counsel contributed, out of which common shared expenses for deposition and court reporter costs, for a document depository, for expert witness and consultant fees, for subpoena services, and for mediation fees were paid. (*See* Caddell Decl. & Ex. D thereto.) Class Counsel also paid certain expenses directly from each firm and not from the common litigation fund. (Caddell Decl. ¶ 42 & Ex. D thereto; Mendelsohn Decl. ¶ 10; Shahian Decl. ¶ 18; Starr Decl. ¶ 10; Fisher Decl. ¶ 17 & Ex. C thereto.) Counting the total litigation fund expenditures and direct expenditures, Class Counsel's current expenses total $41,745.49. (*Id.*)[12] The Court

---

[12] This total does not include Class Counsel's contributions to the litigation fund, which would be duplicative of the litigation fund expenditures already included in the total. Caddell & Chapman has reduced its travel expenses by $2,000. (Caddell Decl. ¶ 42.)

should therefore award the requested expenses.  *Hartless*, 273 F.R.D. at 646 (awarding reasonable costs and expenses).

### F. The Court Should Award the Requested Service Awards to the Representative Plaintiffs.

An award to the Representative Plaintiffs is proper to compensate them for the service they have performed, including the actions they have taken on behalf of the class, the benefits to the class as a result of their actions, and the time and effort they have expended pursuing this litigation.  *Staton*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that relevant factors in evaluating service awards include the time and effort expended and the benefit conferred on the class). Stacie Zakskorn, Rachelle Schreiber, and Javier Hidalgo have all spent significant amounts of time and effort on behalf of the class in this litigation, including submitting their vehicles for inspection and having their depositions taken.  (*See* Exs. 6–8.)

Honda has agreed not to oppose service awards for the Representative Plaintiffs not to exceed $7,500 in the aggregate.  (Settlement Agreement § 4.3.)  This award will be paid separately in addition to the other relief provided and will not reduce any benefits to the Class. Plaintiffs propose that an equitable distribution of this service award would be to grant $2,500 each to Ms. Zakskorn, Ms. Schreiber, and Mr. Hidalgo.  This amount is modest in comparison to the awards approved in similar cases.  *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming $5,000 award to class representative); *see also Hopson*, 2009 WL 928133 at *10 ("In general, courts have found that $5,000 incentive payments are reasonable."); *Knight v. Red Door Salons, Inc.*, No. 08-cv-01520, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (approving $5,000 awards to class representatives).  These awards are appropriate to compensate the Representative Plaintiffs for the effort they undertook on behalf of the Class, without which the recovery achieved here would not have been possible.  *Mego*, 213 F.3d at 463.

### IV.   CONCLUSION

For the reasons stated above, the Court should grant final approval of the Settlement, award attorneys' fees and expenses in the amount of $850,000, and grant service awards to Representative Plaintiffs of $2,500 each.

Dated:  January 7, 2015                          Respectfully submitted,

By:    */s/ Michael A. Caddell*
Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia  B.  Chapman  (State  Bar  No.  164471)
cbc@caddellchapman.com
Cory S. Fein (State Bar No. 250758)
csf@caddellchapman.com
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Payam Shahian (State Bar No. 228406)
Pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles CA 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

Robert L. Starr
THE LAW OFFICE OF ROBERT L. STARR
23277 Ventura Blvd.
Woodland Hills CA 91364
Telephone:  (818) 225-9040
Facsimile:  (818) 225-9042

Matthew R. Mendelsohn
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway, 2nd Floor
Roseland NJ 07068
Telephone:  (973) 228-9898
Facsimile:  (973) 228-0303

L. Timothy Fisher (State Bar No. 191626)
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF CONFERENCE

I, Cory S. Fein, am counsel for Plaintiffs in these proceedings.  On January 7, 2015, I conferred with counsel for Honda, who indicate that Honda is not opposed to the relief requested in this Motion.

 */s/ Cory S. Fein*
Cory S. Fein

## CERTIFICATE OF SERVICE

I, Amy E. Tabor, certify that I filed this document using the Court's CM/ECF system on January 7, 2015 and thereby served a copy on all counsel registered as attorneys of record through the CM/ECF system.

 */s/ Amy E. Tabor*
Amy E. Tabor