1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   STACIE ZAKSKORN, et al.,                    No.  2:11-cv-02610-KJM-KJN

12              Plaintiffs,

13          v.

14   AMERICAN HONDA MOTOR CO.,                    ORDER
     INC.,
15
                Defendant.
16

17

18          Plaintiffs move for final approval of settlement and for attorneys' fees, costs, and

19   class representative enhancement in this class action against American Honda Motor Co., Inc.

20   (Honda).[1]  Mot. for Final Approval, ECF No. 79.  The court held a hearing on this matter on

21   February 27, 2015.  Michael Caddell and Robert Starr appeared for plaintiffs and Brian Newman

22   appeared for defendant.  For the following reasons, plaintiffs' motions are GRANTED.

23   I.       PROCEDURAL BACKGROUND

24          Plaintiffs Zakskorn and Schreiber filed a putative class action on October 4, 2011.

25   ECF No. 1 at 35.  Plaintiff Hidalgo filed a separate action on behalf of a putative class on

26   November 22, 2011.  *Id*. at 24.  The court related the actions on February 14, 2012 (ECF No. 20)

27   ─────────────────
     [1] Plaintiffs initially sued multiple Honda entities but by stipulation dismissed all
28   defendants other than American Honda Motor Co., Inc.  ECF Nos. 21, 24.

1   and consolidated the cases in its preliminary approval order on May 2, 2014 (ECF No. 63).  The

2   court granted plaintiffs' motion for leave to file a consolidated complaint on July 10, 2014, and

3   the complaint was deemed filed that same day.  ECF No. 68.

4           The claims in this case arise from the alleged design and/or manufacturing defects

5   of the braking system in Honda Civic vehicles manufactured between 2006 and 2011.  ECF

6   No. 56-1 ¶ 1.  The alleged defects cause the front brake pads to wear out prematurely and require

7   replacement approximately every 7,500 to 15,000 miles, more frequently than the 30,000-mile

8   life expectancy in a properly functioning braking system.  *Id*. ¶¶ 1, 20.  Plaintiffs allege that

9   although the brake defect is covered by Honda's New Vehicle Limited Warranty, Honda has

10  failed to repair the brake defect even under warranty.  *Id*.  Plaintiffs, in their consolidated

11  complaint, allege (1) violations of the California Consumer Legal Remedies Act, Cal. Civ. Code

12  §§ 1750 *et seq*.; (2) violations of the Unfair Business Practices Act, Cal. Bus. & Prof. Code

13  § 17200; (3) breach of implied warranty under the Song-Beverly Consumer Warranty Act, Cal.

14  Civ. Code § 1791; (4) breach of written warranty under the Magnuson-Moss Warranty Act,

15  15 U.S.C. § 2301 *et seq*.; (5) breach of express warranty under Cal. Comm. Code § 2313;

16  (6) violations of various states' express warranty statutes; (7) violation of various states' implied

17  warranty statutes; and (8) violations of various states' consumer protection statutes.  *Id*.

18          In its preliminary approval order, this court preliminarily certified the following

19  class:

20          [A]ll residents of the United States, Commonwealth of Puerto Rico,
            U.S. Virgin Islands, and Guam who currently own or lease, or
21          previously owned or leased, a 2006–2011 Honda Civic with rear
            drum brakes (DX [or] LX trims) distributed for sale or lease in the
22          United States (including Puerto Rico, Guam and the U.S. Virgin
            Islands).  Excluded from the settlement class are AHM [American
23          Honda Motor Company], AHM's employees, employees of AHM's
            affiliated companies, AHM's officers and directors, insurers of
24          settlement class vehicles, all entities claiming to be subrogated to
            the rights of settlement class members, issuers of extended vehicle
25          warranties, and any Judge to whom the litigation is assigned.

26  ECF No. 63 at 9.  The court granted preliminary approval of the terms of the settlement and

27  appointed the representative plaintiffs as class representatives.  *Id*. at 15.  In its order, the court

28  denied preliminary approval of plaintiff's proposed notice and required an amended notice

                                                2

1    addressing the court's concerns within 30 days. *Id*. at 14. Plaintiffs complied, and filed a new

2    notice schedule on July 1, 2014 (ECF No. 65), which the court adopted on July 10, 2014 (ECF

3    No. 68). The court raised some factual questions regarding the average lifespan and costs of

4    brake pads, the warranty, and the appropriateness of the settlement in comparison with a similar

5    settlement approved in the Central District of California, *Browne v. Am. Honda Motor Co*.,

6    No. CV 09-06750, 2010 WL 9499072, at *1 (C.D. Cal. July 29, 2010), and any comparable

7    verdicts nationally. ECF No. 63 at 12. The parties addressed these questions in their briefing and

8    at hearing to the court's satisfaction.

9            At hearing, the court informed counsel of a potential conflict. The court allowed

10   the parties to consider the matter, and counsel has since raised no objection. The court requested

11   that counsel submit proposed language adopting the settlement agreement, releasing future

12   claims, and detailing the procedure for objections, which counsel filed on March 2, 2015. ECF

13   No. 85.

14   II.     THE SETTLEMENT AGREEMENT

15           A.      Reimbursement

16                   a.      Replacement After Effective Date

17           For settlement class members who require a brake pad replacement after the

18   effective date,[2] Honda will reimburse out-of-pocket expenses incurred by settlement class

19   members for parts and labor paid for the brake pad replacement according to the following

20   schedule, provided that the replacement occurs within the warranty period and is performed at an

21   authorized Honda dealer:

22                   (1) For brake pads that require replacement after being used for
                     7,500 miles or less, Honda will reimburse 100% of the total costs of
23                   replacing the brake pads (including parts, labor, taxes, and rotor
                     resurfacing, but not including any costs relating to replacing rotors).
24
                     (2) For brake pads that require replacement after being used for
25                   7,501 miles to 15,000 miles, Honda will reimburse 50% of the total

26   _____

27           [2] The date on which the time for appeal from the final judgment has elapsed without any
     appeals being initiated, except appeals to the award of counsel fees and expenses or the
     representative plaintiffs' award, or the date on which all appeals have been exhausted (whichever
28   date is earlier). Settlement Agreement ¶ 1.10.

costs of replacing the brake pads (including parts, labor, taxes, and rotor resurfacing, but not including any costs relating to replacing rotors).

(3) For brake pads that require replacement after being used for 15,001 miles to 20,000 miles, Honda will reimburse 25% of the total costs of replacing the brake pads (including parts, labor, taxes, and rotor resurfacing, but not including any costs relating to replacing rotors). Settlement Agreement § 4.2(a), ECF No. 61-1. Because the settlement categories are based on brake pad mileage (as opposed to odometer mileage), class members may be eligible for reimbursement for multiple repairs as long as they occur within the 3 years or 36,000 miles on the odometer, whichever occurs first.

Settlement Agreement §§ 4–5.

b. Replacement Before Effective Date

For settlement class members who paid for a brake pad replacement prior to the effective date, Honda will reimburse out-of-pocket expenses incurred by settlement class members for parts and labor paid for the brake pad replacement according to the same schedule as for those after the effective date, provided that the replacement occurred within the warranty period. Settlement class members who had the brake pad replacement performed before the effective date are not required to have had the work performed at an authorized Honda dealership in order to claim reimbursement. Settlement Agreement § 4.2(b).

c. Claim Forms

To be eligible for reimbursement, each settlement class member must mail a claim form within the claims period. The claims period for claims made under section 4.2(a) of the Settlement Agreement is 60 days after the brake pad replacement for which reimbursement is sought, or by March 31, 2015, whichever date is sooner. *Id*. § 1.5. The claims period for claims made under section 4.2(b) of the Settlement Agreement ends 30 days after the effective date. *Id*. Claimants must also submit written proof that an out-of-pocket expense was incurred as a result of brake pad replacement. *Id*. § 1.19. The proof may be a single contemporaneous writing, such as a receipt, invoice, or repair order or bill, which proves the existence of brake pad replacement and the amount of the out-of-pocket expense. *Id*. Within a reasonable time following the effective date or Honda's receipt of a claim form from a settlement class member, whichever

/////

4

1   occurs later, Honda will send payments directly to settlement class members who submit valid

2   and timely claim forms.

3          B.      Attorneys' Fees and Litigation Costs

4                  Class counsel seeks attorneys' fees of $808,254.51.  This amount was calculated

5   by applying an inverse 0.75 multiplier to the adjusted lodestar of $1,076,703.30.  With expenses

6   of $41,745.49, counsel seeks the total amount of $850,000.  Mot. for Final Approval at 8.  This

7   amount will continue to increase with class member inquiries and other work necessarily related

8   to finalizing the settlement.  *Id.*  These expenses and fees incurred by plaintiffs' counsel to secure

9   the relief on behalf of the settlement class will be paid by Honda, separate from the benefits to the

10  settlement class.  Settlement Agreement § 12.

11         C.  Releases

12                 As part of the consideration for this Settlement Agreement, upon the effective date

13  the representative plaintiffs and settlement class members will grant Honda a standard release,

14  whereby they expressly waive and relinquish the released claims, even if representative plaintiffs

15  or class members subsequently discover facts in addition to or different from the facts currently

16  known.  Settlement Agreement § 7; *see also* Cal. Civ. Code § 1542.

17         D.  Notice

18                 Honda prepared, paid for, and sent the Class Notice, in the form agreed upon by

19  the parties and approved by the court, in September and October 2014.  Settlement Administrator

20  Decl. ¶¶ 6–7; *see* Settlement Agreement §§ 8.2, 8.3.  The Settlement Administrator obtained the

21  names and most current addresses of a total of 1,688,886 Class Members, current and former

22  owners of 940,765 Class Vehicles, from R.L. Polk & Co, a data gathering service for the

23  automotive industry ("R.L. Polk").  Settlement Administrator Decl. ¶¶ 4–5.  R.L. Polk used the

24  vehicles' VIN numbers to obtain current addresses of the settlement class members through the

25  appropriate state government agencies and updated these addresses using the National Change of

26  Address database.  *Id.* ¶¶ 4–6.  The Settlement Administrator then mailed a claims packet

27  containing the Notice and Claim form to each settlement class member.  *Id.* ¶ 6.  Notice packets

28  that were returned by the U.S. Postal Service with forwarding address information were promptly

5

1  re-mailed to the updated addresses. *Id*. ¶ 9.  Honda has received 14,095 claim forms, less than 1

2  percent of the class, as of February 4, 2015.  ECF No. 83 at 6.  The claims period ended March

3  31, 2015.  *Id*.

4              In addition, the Settlement Administrator maintains a publicly accessible website

5  at www.brakepadsettlement.com.  The website contains: (a) instructions on how to obtain

6  reimbursement of claims; (b) instructions on how to contact the Settlement Administrator, AHM,

7  and Class Counsel; (c) downloadable copies of the Claim Form, Class Notice, Settlement

8  Agreement, and other relevant court documents; and (d) responses to frequently asked questions

9  relating to other information about the Settlement.  *Id*. ¶ 8.

10         E.  Service Award

11             Under the Settlement Agreement, representative plaintiffs Stacie Zakskorn,

12  Rachelle Schreiber, and Javier Hidalgo are to receive an amount not to exceed $7,500 in the

13  aggregate as compensation for their time and effort expended in the litigation.  Settlement

14  Agreement § 4.3.

15         F.  Objections

16             In determining final approval of a class action settlement, the court considers

17  whether there are any objections to the proposed settlement and, if so, the nature of those

18  objections.  The fact that there is some opposition does not necessitate disapproval of the

19  settlement; rather, the court must evaluate whether the objections indicate the settlement is

20  fundamentally unfair, inadequate, or unreasonable.  *Ko v. Natura Pet Products, Inc.*,

21  No. C 09-02619, 2012 WL 3945541, at *6 (N.D. Cal. Sept. 10, 2012) (citing *Bennett v. Behring*

22  *Corp.*, 737 F.2d 982 (11th Cir. 1984)).

23             The procedures for filing an objection to the settlement are detailed in the Notice

24  of Proposed Class Action Settlement.  ECF No. 79-14 at 4.  The objections "must be in writing

25  and must be filed with the Court and sent to class counsel and Honda's counsel" no later than

26  January 21, 2014.  *Id*.  The objection must include:

27             (1) The title of the case, Zakskorn v. American Honda Motor
                Co., Inc., Case No. 11-cv-02610-KJM-KJN; (2) your name,
28              address, and telephone number; (3) the approximate date when

you bought or leased your Civic and the vehicle identification number (VIN) of your Civic; (4) a statement that you have reviewed the settlement class definition and that you are a settlement class member; (5) all legal and factual bases for any objection; and (6) copies of any documents that you wish to submit relating to your objection. In addition, if you object to the settlement, you must provide a list of all other objections submitted by you, or your counsel, to any class action settlements in any court in the United States in the previous five years. If you (or your counsel) have not objected to any other class action settlement in the United States in the previous five years, you must say so in the objection.

*Id.* Here, the court has received eleven objections that were also sent to counsel. ECF Nos. 69-76, 81-82. Additionally, two objections were sent to counsel but not sent to the court. Exs. A-B, Tabor Decl., ECF No. 83. As explained below, none of the objections presents any compelling reason to reject the settlement.

a. Procedurally Deficient Objections

The court need not consider objections that do not comply with all of the requirements set forth in the Notice of Settlement. *See Nwabueze v. AT & T Inc*., 2013 WL 6199596, at *7 (N.D. Cal. Nov. 27, 2013), *appeal dismissed* (Mar. 19, 2014).

The court overrules objections from Frederic and DeLacy Fletcher for not disclosing their previous class action settlement objections within the last five years. ECF No. 81.

The court also overrules objections from Alan Heim and Matthew Horn, in light of their having not filed their objections with the court. ECF No. 79-14 at 11.

b. Remaining Objections

The remaining objections to the Settlement Agreement contend that (1) Honda should not be liable to the class (ECF Nos. 69 (Noe), 82 (O'Sheal)); (2) the brake pad reimbursement schedule in the settlement should be more generous or provide larger percentage reimbursements (ECF Nos. 74 (Monaco), 71 (Isminger)); Ex. E., Tabor Decl. (Ciancolo); (3) reimbursement should be available for brake pads replaced with higher mileage (ECF Nos. 73 (Campbell), 74 (Monaco), 75 (Broomfield), 76 (Shamboo), 72 (Turner); (4) Honda should provide compensation for lost time (ECF No. 75 (Broomfield)); (5) Honda should provide

1    reimbursement for consequential damages, such as damage to rotors (ECF No. 75 (Broomfield));

2    and (6) the claim process requires too much supporting documentation and information given the

3    amount of time that has lapsed, Ex. C, Tabor Decl. (Taggart).

4             In response to the objections that Honda should not be liable, the court agrees that

5    Honda is the proper defendant.

6             In response to the objections the settlement should be more generous or provide

7    larger reimbursement, plaintiffs point out that all brake pads eventually wear out, so class

8    members have no claim beyond the percentage of the cost of the brake pads approximating class

9    members' lost use.  Pl.'s Resp. to Obj. at 5, ECF No. 83.

10            In response to the objection the reimbursement should be available for brake pads

11   replaced at higher mileage, the settlement accounts only for the loss in use, not to compensate

12   class members for any wear of their brake pads.  All brake pads do eventually wear out and

13   require replacement.  The settlement appropriately compensates for the accelerated brake wear

14   period.  *Id.*

15            In response to the argument Honda should provide reimbursement for

16   consequential damage, and to those objecting to the sliding scale reimbursement schedule's

17   imprecise calculations of wear, the court accepts the explanation that the reimbursement schedule

18   is designed to provide generally fair compensation, but cannot account for every possible and

19   precise variation in class members' damages.  *Id.* at 4.

20            Finally, in response to the objection to the documentation and supporting

21   information requirement, thousands of claimants have complied with the requirement, and only

22   basic receipt or proof of replacement is required.  *Id.*

23            The court has carefully considered each objection.  The nature of the objections

24   and their low number do not warrant rejecting the Settlement Agreement.  *Hanlon v. Chrysler*

25   *Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he question we address is not whether the final

26   product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

27   collusion.").  In particular, the objections to the reimbursement schedule, claims process, and the

28   amount of reimbursement do not show the settlement to be fundamentally unfair, inadequate, or

1 unreasonable. *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *9 (N.D. Cal.

2 Sept. 13, 2011).

3    III.    CERTIFICATION

4          A party seeking to certify a class must demonstrate it has met the requirements of

5 Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).

6 *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Ellis v. Costco Wholesale Corp.*,

7 657 F.3d 970, 979–80 (9th Cir. 2011).  Although the parties in this case have stipulated that a

8 class exists for purposes of settlement, the court must nevertheless undertake the Rule 23 inquiry

9 independently.  *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

10          Under Rule 23(a), before certifying a class, the court must be satisfied that:

11          (1) the class is so numerous that joinder of all members is
            impracticable (the "numerosity" requirement);
12

13          (2) there are questions of law or fact common to the class (the
            "commonality" requirement);

14          (3) the claims or defenses of representative parties are typical of the
            claims or defenses of the class (the "typicality" requirement); and
15

16          (4) the representative parties will fairly and adequately protect the
            interests of the class (the "adequacy of representation" inquiry).

17 *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting *In re Itel*

18 *Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)); *see also* Fed. R. Civ. P. 23(a).

19          The court also must determine whether the proposed class satisfies Rule 23(b)(3).

20 To meet the requirements of this subdivision of the rule, the court must find that "questions of

21 law or fact common to class members predominate over any questions affecting only individual

22 members, and that a class action is superior to other available methods for fairly and effectively

23 adjudicating the controversy."  *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541,

24 2558 (2011); *see also* Fed. R. Civ. P. 23(b)(3)).  "The matters pertinent to these findings include:

25 (A) the class members' interests in individually controlling the prosecution or defense of separate

26 actions; [and] (B) the extent and nature of any litigation concerning the controversy already

27 begun by or against class members . . . ."  Fed. R. Civ. P. 23(b)(3)(A)–(B).

28 /////

1          On May 2, 2014, the court preliminarily certified the proposed class, finding the

2    class satisfied the numerosity, commonality, typicality and adequacy of representation

3    requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule

4    23(b)(3).  ECF No. 63 at 4-9.

5          No party or class member has objected to certification of the settlement class, and

6    there is nothing before the court to suggest this prior certification was improper. The court

7    therefore finds certification of the class for the purpose of final approval of the settlement

8    agreement is appropriate.

9    IV.    NOTICE TO, RESPONSE FROM, AND PAYMENT TO CLASS MEMBERS

10          In its preliminary approval order, the court requested the parties address the court's

11   concerns regarding the class settlement notice and notice and hearing schedule.  ECF No. 63 at

12   15-16.  The parties filed a joint response, and the court approved the proposed notice and found it

13   "adequately protect[ed] class members' interests."  ECF No. 68.  Noting the parties and the

14   settlement administrator have complied with the notice procedures as outlined in their proposal

15   (*see* Decl. of Settlement Administrator, Ex. 10, ECF No. 79-14), the court finds the notice

16   requirements of Rule 23(e) have been satisfied.

17   V.     THE SETTLEMENT AND FAIRNESS

18          A.    Legal Framework

19          When the parties reach settlement of a class action, the court must find the

20   proposed settlement is "fundamentally fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026.

21   After the initial certification and notice to the class, the court conducts a fairness hearing before

22   finally approving any proposed settlement.  *Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261,

23   1267 (9th Cir. 2010); Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the

24   court may approve it only after a hearing and on finding that it is fair, reasonable, and

25   adequate.").  The court must balance a number of factors in determining whether the proposed

26   settlement is fair, adequate and reasonable:

27          the strength of the plaintiffs' case; the risk, expense, complexity,
            and likely duration of further litigation; the risk of maintaining class
28          action status throughout the trial; the amount offered in settlement;

10

> the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *Adoma v. Univ. of Phx.*, 913 F. Supp. 2d 964, 974–75 (E.D. Cal. 2012).  The list is not exhaustive and the factors may be applied differently in different circumstances.  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

The court must consider the settlement as a whole, rather than its component parts, in evaluating fairness, and it "must stand or fall in its entirety."  *Hanlon*, 150 F.3d at 1026. Ultimately, the court must reach "a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.

B.      Strength of Plaintiff's Case

When assessing the strength of plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation."  *Vanwagoner v. Siemens Indus., Inc.*, 2014 WL 7273642, at *5 (E.D. Cal. Dec. 17, 2014) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989)).  The court cannot reach such a conclusion, because evidence has not been fully presented and the "settlements were induced in large part by the very uncertainty as to what the outcome would be, had litigation continued."  *Id.*  Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."  *Id.*

Plaintiffs argue this factor weighs in favor of settlement because defendant has "vigorously denied liability," asserted several potentially availing affirmative defenses, and the litigation raises inherent causation questions because an individual driver may affect the speed of the brake pads' wear.  Mot. for Final Approval at 10–11.  Plaintiffs recognize the limitations of

/////

11

1    their case and potential for recovery, and the challenge of establishing Honda's liability for the

2    alleged premature wear.  This factor weighs in favor of approving the settlement.

3         C.      Risk, Expense, Complexity and Likely Duration of Further Litigation; Risk of
                  Maintaining Class Status

4

5              "Approval of settlement is 'preferable to lengthy and expensive litigation with

6    uncertain results.'"  *Morales v. Stevco, Inc*., 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)

7    (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

8    2004)).  The Ninth Circuit has explained "there is a strong judicial policy that favors settlements,

9    particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*,

10   516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

11   1276 (9th Cir. 1992)).  "'"[I]t must not be overlooked that voluntary conciliation and settlement

12   are the preferred means of dispute resolution.  This is especially true in complex class action

13   litigation    . . . .'"  *Id.* (quoting *Officers for Justice*, 688 F.2d at 625).

14             Here, the case presents complicated issues of safety, notice, causation, and

15   damages, and would require significant discovery to determine the extent of defendant's alleged

16   liability.  In addition, plaintiffs would likely need to retain costly experts, and would be

17   accountable to a class with a very large number of potential members.  Plaintiffs also point to

18   comparable cases involving defects where individual causation issues were at issue and a court

19   denied or reversed certification of the class, suggesting a risk of maintaining class status.  Mot.

20   for Final Approval at 22.  Because the court finds this litigation would likely be complex, risky,

21   lengthy, and expensive for both sides, this factor favors settlement.

22        D.      Amount Offered in Settlement

23             The proposed settlement is not to be judged against "a hypothetical or speculative

24   measure of what might have been achieved by the negotiators."  *Officers for Justice,* 688 F.2d at

25   625 (citations omitted); *see also Collins v. Cargill Meat Solutions Corp.,* 274 F.R.D. 294, 302

26   (E.D. Cal. 2011) (a court must "'consider plaintiffs' expected recovery balanced against the value

27   of the settlement offer'") (quoting *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080

28   (N.D. Cal. 2007)).  "'The fact that a proposed settlement may only amount to a fraction of the

1    potential recovery does not, in and of itself, mean that the proposed settlement is grossly

2    inadequate and should be disapproved.'" *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234,

3    1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir.

4    1974)).

5            Plaintiffs contend the proposed settlement is "an excellent result" because it

6    provides reimbursement for brake pads replaced at up to 20,000 miles, two-thirds of the total

7    mileage sought by plaintiffs.  Mot. for Final Approval at 12.  The settlement provides 100 percent

8    of the average $115 brake pad replacement cost up to 7,500 miles, 50 percent up to 15,000 miles,

9    and 25 percent up to 20,000 miles.  Settlement Agreement § 4.2; Newman Decl. ¶ 6, ECF No 79-

10   13.  In contrast to the similar *Browne* settlement, which the court approved, here there is no cap to

11   the total amount that Honda will reimburse. *Cf. Browne,* 2010 WL 9499072, at *2 (capping

12   reimbursements at $150 for replacements with new material brake pads or 50 percent of $125 for

13   replacements performed in the past).  Given the relatively low range of replacement costs, this is

14   an appropriate and reasonable recovery for plaintiffs.  The amount was agreed upon after arms'

15   length negotiations with a mediator presiding, as described below, and guarantees compensation

16   for a reasonable value of the loss attributable to the premature wear.  This factor weighs in favor

17   of approving the settlement.

18           E.      Extent of Discovery and Stage of the Proceedings

19           "A settlement following sufficient discovery and genuine arms-length negotiation

20   is presumed fair." *Nat'l Rural Telecomms.*, 221 F.R.D. at 528 (citing *City Partnership Co. v.*

21   *Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).  Significant discovery has

22   been conducted since discovery commenced in April 2012.  ECF No. 27.  Plaintiffs' counsel

23   "reviewed voluminous quantities of evidence produced during the course of discovery" and

24   retained and deposed experts.  Mot. for Final Approval at 15.  Defendant deposed plaintiffs and

25   inspected their vehicles.  The well-developed factual record enabled the parties to reach

26   settlement with a good understanding of the issues.  *See True v. American Honda Motor Co.*,

27   749 F. Supp. 2d 1052, 1078 (C.D. Cal. 2010) (finding, in a case where "class counsel reviewed

28   thousands of pages of relevant documents," that "discovery ha[d] been sufficient to permit the

                                                13

1    parties to enter into a well-informed settlement, and this factor weighs in favor of approval").

2    This factor weighs in favor of approving the settlement agreement.

3           F.      Experience and Views of Counsel

4           Class counsel believes the settlement is "an excellent result." Mot. for Final

5    Approval at 15.  "Great weight is accorded to the recommendation of counsel, who are most

6    closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms.*,

7    221 F.R.D. at 528 (internal quotation marks and citations omitted).  This deference is justified

8    because "[p]arties represented by competent counsel are better positioned than courts to produce a

9    settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific*

10   *Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, each of the firms representing

11   plaintiffs has significant experience litigating class actions, and in particular the lead partners

12   have strong experience. *See* Exs. A-F, ECF No. 79.  This factor weighs in favor of approving the

13   settlement.

14          G.      Reaction of the Class

15          A total of 1,688,899 potential class members have been identified and notified of

16   the settlement agreement.  The Settlement Administrator had received 14,095 claim forms as of

17   February 4, 2015.  ECF No. 83 at 6.  Objections were to be filed with the court's electronic filing

18   system or mailed, with a copy mailed to plaintiff and defendant's counsel, no later than 45 days

19   after the mailing of the notice.  Settlement Agreement ¶ 10.1.  The parties and the court had

20   received eight procedurally proper objections and 418 opt-outs as of January 2, 2015.  Decl. of

21   Settlement Administrator at 5, ECF No. 79-14.  Each class member who opts out of the settlement

22   relinquishes any rights to benefits under the Settlement Agreement, but does not release his or her

23   individual claims.  Settlement Agreement ¶ 10.4.  Any objector had the right to appear in person

24   at the final fairness hearing.  No objectors appeared.  Given the very small number of objections,

25   less than 0.0005 percent of the class, and the low number of opt-outs, 0.0247 percent of the total

26   potential class, the overall reaction of the class has been positive.  This factor too weighs in favor

27   of approval. *See Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 577 (9th Cir. 2004) (affirming

28   /////

                                                14

1    approval of a class action settlement where 90,000 class members received notice, and 45

2    objections and 500 opt outs were received).

3         H.    Governmental Participant

4              In compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b), the parties

5    notified the Attorney General of the United States and Attorneys General of each of the fifty

6    states of the settlement.  Mot. for Final Approval at 16; Newman Decl. ¶ 5.  No Attorney General

7    has sought to intervene or filed an objection.

8         I.    Possibility of Collusion

9              Before approving a settlement, the court must consider whether it is the product of

10   collusion.  *Hanlon*, 150 F.3d at 1026; *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443,

11   453-54 (E.D. Cal. 2013).

12             Here, the parties reached settlement following a mediation session on May 9,

13   2013, focusing their discussion on agreeing to the material terms of the settlement.  Caddell Decl.

14   at 17.  After reaching agreement, the parties met for a second session on  September 30, 2013 to

15   discuss attorneys' fees.  *Id.*  Both sessions were convened by Maureen Summers, an experienced

16   mediator.  *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)

17   (participation of mediator is not dispositive, but is "a factor weighing in favor of a finding of non-

18   collusiveness").  The court finds no objective signs of collusion in this action, even after

19   considering the "clear sailing" provision as discussed below.  Accordingly, this factor weighs in

20   favor of approving the settlement.  *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit*

21   *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 457–58 (C.D. Cal. 2014).

22             In sum, considering all relevant factors, the court concludes the circumstances

23   surrounding the settlement weigh in favor of finding the settlement fair and adequate.  All of the

24   preconditions to certification have remained satisfied since the court preliminarily certified the

25   settlement class.  After carefully reviewing the parties' submissions in light of the relevant

26   factors, for the reasons discussed above, the motion for final approval of class settlement is

27   GRANTED.

28   /////

15

1    VI.    ATTORNEYS' FEES AND COSTS

2           Where the payment of attorneys' fees is part of the negotiated settlement, the fee

3    settlement must be separately evaluated for fairness in the context of the overall settlement.  *See*

4    *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002).  Plaintiffs request an award of

5    attorneys' fees and costs of $850,000, consisting of reimbursement of $41,745.49 in expenses and

6    $808,254.51 in attorneys' fees.  Mot. for Final Approval at 24.  Plaintiffs also seek a $2,500 class

7    representative enhancement fee for each of the three named plaintiffs, which defendant has

8    agreed not to oppose.  *Id.* at 30.

9           A.    Class Counsel's Request for Attorneys' Fees

10          Rule 23 permits a court to award "reasonable attorney's fees . . . that are

11   authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Even when the parties

12   have agreed on an amount, the court must award only reasonable attorneys' fees in a class action

13   settlement.  *Bluetooth*, 654 F.3d at 941.  Plaintiffs propose using the lodestar method of

14   calculation, contending it is more straightforward than the percentage of recovery method because

15   the total settlement amount has not yet been determined.  Mot. for Final Approval at 25.  The

16   lodestar method is appropriate where the value of a common fund is uncertain.  *Hanlon*, 150 F.3d

17   at 1029.

18          Under the lodestar method, the prevailing attorneys are awarded an amount

19   calculated by multiplying the hours they reasonably expended on the litigation by their reasonable

20   hourly rates.  *Staton v. Boeing Co.,* 327 F.3d 938, 965 (9th Cir. 2003).  This amount may be

21   increased or decreased by a multiplier that reflects any factors not subsumed within the

22   calculation, such as "the quality of representation, the benefit obtained for the class, the

23   complexity and novelty of the issues presented, and the risk of nonpayment."  *Bluetooth*, 654 F.3d

24   at 942.  For work performed up to January 6, 2013, based on the contemporaneous time records

25   kept by Class Counsel and summarized by category in the attached declarations, Class Counsel's

26   cumulative base lodestar is $1,196,337.00.  Caddell Decl. ¶ 41; Mendelsohn Decl. ¶¶ 8–9;

27   Shahian Decl. ¶ 10; Starr Decl. ¶ 4; Fisher Decl. ¶ 16, ECF No. 79.  To eliminate any concern

28   over duplicative or unnecessary billing, counsel unilaterally reduced their collective lodestar by

16

1    10 percent, from $1,196,337.00 to $1,076,703.30.  Caddell Decl. at 23; Exs. 1-13, ECF No. 79.

2    Plaintiffs also have applied an "inverse" multiplier of .75 to adjust the lodestar to $808,254.51.

3    Mot. for Final Approval at 25.

4           Defendant has not objected, as agreed in the Settlement Agreement's "clear

5    sailing" provision.  Settlement Agreement ¶ 12.2.  "[W]hen confronted with a clear sailing

6    provision, the district court has a heightened duty to peer into the provision and scrutinize closely

7    the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding

8    'unreasonably high' fees simply because they are uncontested."  *Bluetooth*, 654 F.3d at 948.

9    Where, as here, the fees are paid on top of the settlement amount, the court's duty of scrutiny is

10   especially high.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) (finding

11   collusion may be inferred from a "clear sailing" provision where attorney's fees are paid on top of

12   the settlement fund).

13          Here, lead plaintiffs' counsel established a common litigation fund, to which all

14   plaintiffs' counsel contributed except the Starr Firm, which submitted only individual expenses.

15   Out of the common fund, common shared expenses (such as deposition and court reporter costs,

16   document depository, expert witness and consultant fees, subpoena services, and mediation fees)

17   were paid.  Mot. for Final Approval. at 29.  The requested expenses of $41,745.49 include both

18   contributions to the common fund and a firm's individual expenses (for travel, for example).  *Id*.

19   at 8.  Each firm contributed a different amount to the fund; that amount is identified in their

20   individual declarations along with their separate expenses.  *See* ECF Nos. 79-1 at 19, 79-6 at 9,

21   79-7 at 5, 79-8 at 5, 79-9 at 5.

22          To assist the court in calculating the lodestar, a plaintiff must submit "satisfactory

23   evidence . . . that the requested rates are in line with those prevailing in the community for similar

24   services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v.*

25   *Stenson*, 465 U.S. 886, 895–96 n.11 (1984).  Plaintiffs had several firms representing them,[3] and

26

27          [3] After initially denying the motion to appoint class counsel without prejudice, the court
     granted the motion after further briefing on the issue of why multiple firms were necessary to
28   litigate the case and represent class interests.  ECF No. 67.

each firm has submitted declarations accounting for its time, disclosing the hourly rates for each

attorney who worked on the case, and detailing the costs associated with the suit.  *See* Exs. 1-13,

ECF No. 79.  The declarations also detail counsels' relevant experience and other courts'

approval of their rates.  *See id*.  Finally, the declarations include the type of work performed and

the number of hours expended on each category of work by each attorney or paralegal.  The

categories of work performed are: 1) pre-filing investigation and pleadings; 2) post-filing

investigation and discovery; 3) legal research; 4) written discovery and document review; 5)

depositions and vehicle inspections; 6) preparing for and attending mediation; 7) settlement

negotiations and settlement approval motions/related documents; and 8) post-settlement

communications with class members. ECF No. 79-3 at 2.  The court has scrutinized these records

for their reasonableness.

                         a.   Caddell & Chapman

            The hourly rates for Caddell & Chapman, based in Houston, Texas, range from

$175-$250 for paralegals to $450-575 for senior associates and $650-875 for senior partners.

Decl. of Michael Caddell at 19-20, ECF No. 79-1.  The rates covered by the instant

reimbursement rate are $875 for senior partner Michael Caddell; $675 per hour for senior partner

Cynthia Chapman; $650 per hour for senior partner Corey Fein; $575 per hour for senior

associate Brian Keller; $450 per hour for senior associate Amy Tabor; $500 for senior associate

Dana Levy; $250 for paralegal Kathy Kersh; $250 for paralegal John C. Dessalet; $250 for

paralegal Sylvia Vargas; and $175 for paralegal Felicia Labbe.  In support of the motion, Caddell

represents that he has an outstanding record representing plaintiffs throughout the United States in

complex litigation cases.  The majority of his and his firm's practice involves class action and

consumer litigation.  He and Chapman were involved in a national class action settlement in

California that extended warranties and other relief to more than 860,000 purchasers of Toshiba

laptop computers.  Their firm's rates have been approved by multiple courts across the country,

including the Central District of California, the Eastern District of Texas, and the Northern

District of Illinois; they do not cite any such approval from this district.  *Id*. at 21.  They submit a

total of 894.9 hours, for a total of $535,557.50 in attorneys' fees.  ECF No. 79-5.  The hours

1   include time spent pre-filing, post-filing, and over the course of discovery and settlement

2   negotiations.  *Id*.  The breakdown of each category of work is the following: 1) pre-filing

3   investigation and pleadings (126); 2) post-filing investigation and discovery (156.5); 3) legal

4   research (6.8); 4) written discovery and document review (41.9); 5) depositions and vehicle

5   inspections (57.4); 6) preparing for and attending mediation (144.9); 7) settlement negotiations

6   and settlement approval motions/related documents (235.5); and 8) post-settlement

7   communications with class members (15.1).  ECF No. 79-4.

8              b.   Strategic Legal Practices

9          Strategic Legal Practices (SLP) identifies hourly rates of $595 per hour for partner

10   Payam Shahian; $550 per hour for senior counsel Gregory Yu; $325 per hour for associate

11   Christopher Swanson.  Shahian Decl. at 4, ECF No. 79-6.  These rates have been approved by

12   other district and state courts in California.  *Id*. at 7-8.  Shahian states that he previously

13   represented Ford Motor Company in over 150 consumer vehicle warranty cases; since 2007 he

14   has represented consumers as well as employees in over 50 class action matters.  *Id*.  The firm

15   billed 267.70 hours litigating this action, for a total lodestar of $140,498.50.  *Id*. ¶ 9.  Its

16   accounting of work performed is divided by individual.  The work performed includes

17   investigations, pleadings, legal research, discovery and document review, depositions, preparing

18   for and attending mediation, and settlement-related communications.  *Id*. at 11.  The breakdown

19   of each category of work is the following: 1) pre-filing investigation and pleadings (28.3); 2)

20   post-filing investigation and discovery (34.7); 3) legal research (8.5); 4) written discovery and

21   document review (61.2); 5) depositions and vehicle inspections (5.5); 6) preparing for and

22   attending mediation (68.7); 7) settlement negotiations and settlement approval motions/related

23   documents (60.8); and 8) post-settlement communications with class members (0.0).  *Id*. at 6.

24   SLP also identifies $447 in unreimbursed costs and expenses for filing, court fees, messenger

25   service, and parking.  *Id*. at 7.

26              c.   The Starr Firm

27          The Starr Firm identifies hourly rates of $675 for managing partner Robert Starr,

28   $350 for associate Luis Duenas, $225 for law clerk Ben Hill, and $195 for paralegal Gordon

1   Wong. Starr Decl. at 1, ECF No. 79-7. These rates have been approved by other district and state

2   California courts. *Id*. ¶ 7. Starr provides a firm resume listing several class actions in which he

3   has been appointed class counsel, including several automobile class actions. *Id*. at 2–3. His firm

4   spent 535.9 hours on this action, including pre- and post- filing, research, discovery and

5   document review, depositions, and various settlement-related negotiations and communications.

6   *Id*. at 9. The breakdown of each category of work is the following: 1) pre-filing investigation and

7   pleadings (70.7); 2) post-filing investigation and discovery (168.2); 3) legal research (39.5);

8   4) written discovery and document review (69.8); 5) depositions and vehicle inspections (134.6);

9   6) preparing for and attending mediation (35.2); 7) settlement negotiations and settlement

10   approval motions/related documents (10.7); and 8) post-settlement communications with class

11   members (7.2). *Id*. The firm submits costs and expenses of $4,236.94 incurred for expert fees,

12   purchasing parts, storage, rental, and travel. *Id*. at 5.

13             d.  Mazie Slater Katz & Freeman, LLC

14          Mazie Slater, based in Roseland, New Jersey, identifies hourly rates of $545 for

15   partner Matthew R. Mendelsohn, $325 for associate Andrew Sick, and $295 for associate Drew

16   Packett. Mendelsohn Decl. at 4, ECF No. 79-8. These rates have been approved by other courts,

17   one being in California. *Id*. The firm also provides a resume including a list of class actions in

18   which it has represented clients (Ex. A, ECF No. 79-8), and notes it has been involved in class

19   actions throughout the country, including other automobile product defect cases in California. *Id*.

20   ¶ 4. The firm's attorneys spent a combined 292 hours on the litigation, for a total cost of

21   $140,028.00. *Id*. ¶ 9. The breakdown of each category of work is the following:  1) pre-filing

22   investigation and pleadings (45.8); 2) post-filing investigation and discovery (41.4); 3) legal

23   research (4.7); 4) written discovery and document review (133.8); 5) depositions and vehicle

24   inspections (11.6); 6) preparing for and attending mediation (31.3); 7) settlement negotiations and

25   settlement approval motions/related documents (19.8); and 8) post-settlement communications

26   with class members (3.6). *Id*. at 25. They also incurred a total of $11,395.95 in unreimbursed

27   expenses and costs, including their litigation fund contribution, document delivery, photocopying,

28   postage, travel, website development and class member data collection. *Id*. at 5.

1

       e.  Bursor & Fisher

2

       This firm, based in New York City and Walnut Creek, California, submitted

3

hourly rates of $850 for partner Scott Bursor, $690 for partners L. Timothy Fisher and Joseph

4

Marchese, $450 for associate Sarah Westcot, $400 for associates Neal Deckant and Asher B.

5

Bundlie, $375 for associate Yitzchak Kopel, $325 for associate Julia Luster, and $190 for

6

Litigation Support Staff Debbie L. Schroeder, Rachel Aldous, Alexandra Hyatt, and Christine

7

Patruno.  Fisher Decl, Ex. B, ECF No. 79-9.  These rates have been approved by other courts in

8

the Central District of California, the Northern District of California, and the District of New

9

Jersey. *Id.* ¶ 19.  The firm expended 169 hours on investigations, pleadings, legal research,

10

discovery and document review, depositions, preparing for and attending mediation, and

11

settlement-related communications.  *Id.* ¶ 16.  The breakdown of each category of work is the

12

following:  1) pre-filing investigation and pleadings (9.1); 2) post-filing investigation and

13

discovery (43.3); 3) legal research (1.9); 4) written discovery and document review (15.1);

14

5) depositions and vehicle inspections (50.8); 6) preparing for and attending mediation (22.6);

15

7) settlement negotiations and settlement approval motions/related documents (22.3); and 8) post-

16

settlement communications with class members (3.9).  ECF No. 79-9 at 26.  It also incurred

17

$13,893.71 in unreimbursed costs and expenses, including its $10,000 contribution to the

18

litigation fund, filing fees, travel, court reporter, service of process, and Westlaw research.  *Id.*,

19

Ex. C.

20

     B.     The Reasonableness of the Hourly Rates

21

       The burden is on a plaintiff to "produce evidence that the requested rates are in

22

line with those prevailing in the community for similar services by lawyers of reasonably

23

comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 895–96 (internal quotation

24

marks omitted); *see also Welch v. Metropolitan Life Ins. Co*., 480 F.3d 942, 945–46 (9th Cir.

25

2007) (the relevant metric is the market rate charged by similarly competent attorneys for

26

representation of comparable complexity).  As many cases in this district observe, "prevailing

27

hourly rates in the Eastern District of California are in the $400/hour range."  *Monterrubio*,

28

291 F.R.D. at 460 (collecting cases).  These rates can be adjusted based on experience. *See, e.g.*,

1   *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, at \*11–13 (E.D. Cal. 2011) (awarding

2   $540 per hour for work performed by a partner with more than 8 years of experience); *Vasquez v.*

3   *Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491 n.1 (E.D. Cal. 2010) (awarding $525 per hour for

4   work performed by a partner with more than 10 years of experience); *cf. Gong-Chun v. Aetna*

5   *Inc.*, 2012 WL 2872788, at \*22 (E.D. Cal. 2012) ("The prevailing rate in the local community for

6   attorneys with less than four years of experience is $300 per hour.").

7           While the Ninth Circuit has observed that "[g]enerally, when determining a

8   reasonable hourly rate, the relevant community is the forum in which the district court sits[,]"

9   *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010), this is not an absolute

10  rule.  "To insist on awarding significantly-lower hourly rates in the Eastern District than those in

11  the other judicial districts in California would discourage attorneys from bringing meritorious

12  lawsuits in this district."  *Adoma*, 913 F.Supp.2d at 984.  In a similar case in this district,

13  concerning reimbursement for electronic throttle module replacement in Volvo vehicles, the court

14  approved $1,573,095 in attorneys' fees for 3,621.4 hours of work over four years, at the rate of

15  approximately $434.43 per hour, without comparing the rates to the prevailing Eastern District

16  rates.  *Trew v. Volvo Cars of N. Am., LLC*, No. S-05-1379, 2007 WL 2239210, at \*4 (E.D. Cal.

17  July 31, 2007).  The requested fees here, $808,254.51 for 2,159 hours over the course of four

18  years, is significantly less: $374.36 per hour.  Though the hourly rates submitted by senior

19  counsel in particular are significantly more than the prevailing Eastern District rate, class counsel

20  has recognized as much through application of the inverse multiplier of .75 in addition to the

21  10 percent fee reduction.  *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at \*18 (C.D.

22  Cal. Apr. 29, 2014), *objections overruled*, 2014 WL 4090512 (C.D. Cal. June 20, 2014) (10%

23  unilateral discount and inverse multiplier rendered $1,882,713.76 attorneys fee for 11 firms

24  reasonable in design and manufacturing car defect case).  Moreover, each of the five firms

25  representing plaintiffs resides outside of the Eastern District, which accounts for the difference in

26  their proposed hourly rates compared to those typically sought in this district.  They have litigated

27  the case in this district because the lead plaintiff, Stacie Zakskorn, resides in this district.  Compl.,

28  ECF No. 1 at 3.  The plaintiff in the consolidated case (2:11-cv-03120), Javier Hidalgo, also filed

1   his case in this district.  The court also notes that the attorneys' fees are paid by Honda on top of

2   the settlement amount, so the rates do not affect the potential recovery for class members.

3           The court has examined other cases decided in the Eastern District in which the

4   prevailing rates were adjusted to be consistent with the attorneys' experience.  *See Bond*, 2011

5   WL 2648879, at *12; *Gong-Chun*, 2012 WL 2872788, at *22.  As a cross-check, the court has

6   calculated an adjusted lodestar using the rates from those cases, where the lawyers were similarly

7   experienced, and found an adjusted lodestar of $1,071,128.[4]  This obviously is more than the

8   requested fees of $808,254.51.  While the individual billing rates for partners may be higher than

9   the prevailing rates in the Eastern District, the inverse multiplier, lower rates for associates, and

10  the voluntary 10 percent haircut render the figure reasonable and consistent with awards in this

11  district.  For these reasons, combined with the extensive experience of the attorneys and lack of

12  objection from class members to the fees and expenses requested, the court finds the proposed

13  lodestar amount to be reasonable.

14          C.      Reasonableness of Hours Expended

15          This litigation commenced in 2011 and since that time, multiple parallel cases

16  have been consolidated.  There has been no substantive motion practice beyond the motion for

17  preliminary approval of settlement and the instant motion for final approval.  Discovery required

18  significant time.  Plaintiffs served an initial set of 24 interrogatories and 113 document requests

19  on February 10, 2012.  Fisher Decl. ¶ 5.  In response to plaintiffs' document requests,

20              Honda produced over 54,000 pages of documents including
21              technical drawings of the braking system, owners' manuals, service
                and repair manuals, maintenance and warranty manuals, brochures,
                technical service bulletins, warranty repair invoices, warranty
22              reimbursements, service records, vehicle population numbers for
                vehicles equipped with the defective braking system, warranty data,
23              consumer complaint reports, test reports, quality studies, e-mails

24  _____

25          [4] The court adjusted the lodestar by assigning hourly rates more in line with the prevailing
    rates in the Eastern District ($540-$695 for partners and $300-$490 for associates, based on
26  seniority and experience, and $180 for paralegals).  It then multiplied each hourly rate by the
    individual's hours expended in the matter as represented in the firms' declarations, assuming the
27  hours are reasonable.  This revealed an adjusted lodestar of $491,531 for Caddell & Chapman,
    $127,522 for Strategic Legal Practice, $238,633 for the Starr Firm, $138,970 for Mazie Slater,
28  and $74,472 for Bursor & Fisher.

                                                23

1
2

concerning the braking system, meeting agendas and presentation documents, engineering specifications, premature pad wear countermeasure reports and failure analysis charts.

3    *Id*.  Plaintiffs also engaged in third-party discovery with the manufacturer of the brake pads.  *Id*. ¶

4    7.  In examining the 2,159 total hours expended in this litigation over four years, the court finds

5    the number reasonable in comparison to other class action awards in consumer product defect

6    cases.  *See, e.g., Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1327 (W.D. Wash. 2009)

7    (2,407 hours reasonable in consumer class litigation with comparable reimbursement settlement);

8    *Trew v. Volvo Cars of N. Am., LLC*, 2007 WL 2239210, at *5 (E.D. Cal. July 31, 2007) (3,621.4

9    hours of work over four years reasonable, with comparable reimbursement settlement).

10          D.       Percentage of the Fund Cross-Check

11                   When able, a court may cross-check the reasonableness of the lodestar against the

12   alternative means of calculating a fee award as a percentage of the common fund.  *See Grays*

13   *Harbor Adventist Christian Sch. v. Carrier Corp.,* 2008 WL 1901988, at *5 (W.D. Wash. Apr.

14   24, 2008) (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 988–90 (9th Cir. 1997)).  Even if a

15   settlement fund cannot be completely determined, it is instructive as a check of the lodestar.

16   *FACTA*, 295 F.R.D. at 468.  Here, a common fund cannot be exactly determined, because it is

17   subject to the final total number of claims and the individual claimants' cost of replacing their

18   brake pads and the number of miles accrued at the time of the replacement.  For the purposes of a

19   rough cross-check, the court assumes 14,095 claimants will be reimbursed $115 each (2

20   replacements at average replacement cost, 50 percent reimbursement each), which would yield a

21   common fund amount of $1,620,925.  The standard percentage award in common fund cases is 25

22   percent, though there are factors justifying departure from such a benchmark, as high as 33

23   percent.  *Khanna v. Intercon Sec. Sys., Inc.*, 2014 WL 1379861, at *12 (E.D. Cal. Apr. 8, 2014).

24   Even assuming the highest percentage, 33 percent of that award is $534,905.25.  The common

25   fund cross-check, though not exact, confirms the reasonableness of the award.

26          E.       Conclusion re Fees

27                   The court has examined the reasonableness of the hourly rates, number of hours

28   expended, and the adjusted lodestar, and finds the request for attorneys' fees to be reasonable.

24

1    The court has also examined the record and finds no evidence of collusion, despite the clear

2    sailing agreement.  Accordingly, the court GRANTS class counsels' request for an $808,254.51

3    award, to be distributed among the five firms as proposed and according to the rates and hours

4    submitted.

5            F.      Class Counsel's Request for Litigation Costs

6                    The court must determine an appropriate award of costs and expenses.  Fed. R.

7    Civ. P. 23(h).  "[I]n evaluating the reasonableness of costs, 'the judge has to step in and play

8    surrogate client.'"  *FACTA*, 295 F.R.D. at 469 (quoting *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d

9    566, 572 (7th Cir. 1992)).  "In keeping with this role, the court must examine prevailing rates and

10   practices in the legal marketplace to assess the reasonableness of the costs sought."  *Id.* (citing

11   *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286–87 (1989)).  "Expenses such as reimbursement

12   for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research,

13   postage, courier service, mediation, exhibits, documents scanning, and visual equipment are

14   typically recoverable."  *Rutti v. Lojack Corp., Inc.*, 2012 WL 3151077, *12 (C.D. Cal. July 31,

15   2012).

16                   As mentioned above, Caddell & Chapman established a litigation fund, to which

17   all plaintiffs' counsel contributed, out of which common shared expenses for deposition and court

18   reporter costs, document depository, expert witness and consultant fees, subpoena services, and

19   mediation fees were paid.  Ex. D, Caddell Decl.  Though each firm contributed to the fund, the

20   common fund is accounted for in Caddell's declaration, as a total of $30,721.89.  *Id.*  Caddell &

21   Chapman also directly paid expenses for "professional services, filings, printing and copying,

22   travel, meals, postage and shipping, computerized research, staff overtime, long-distance

23   telephone charges, and other expenses reasonably incurred in litigating this action on behalf of the

24   class."  Caddell & Chapman's expenses total $10,724.23, after a voluntary $2,000 reduction in its

25   travel expenses.  *Id.* at 19.  Plaintiffs identify a total in combined costs of $41,745.49.  Mot. for

26   Final Approval at 24.

27                   After carefully reviewing the summary of expenditures and in light of class

28   counsels' representations to the court during the final approval hearing, the court finds the costs

                                                       25

1   requested for travel, mediation expenses, filing fees, and deposition costs to be reasonable.

2   Courts in fact routinely approve reimbursement of such costs.  *See, e.g., FACTA*, 295 F.R.D. at

3   469; *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120, at *6 (N.D. Cal. Sept.26, 2013)

4   (reimbursing mediation fees). The motion for reimbursement of costs is GRANTED.

5               G.     Enhancement Award

6               Plaintiffs Stacie Zakskorn, Rachelle Schreiber, and Javier Hidalgo are the

7   representative plaintiffs.  They "have all spent significant amounts of time and effort on behalf of

8   the class in this litigation, including submitting their vehicles for inspection and having their

9   depositions taken."  Mot. for Final Approval at 40.  Plaintiffs seek a $7,500 enhancement award,

10  $2,500 for each representative plaintiff. This award will be paid separately and in addition to the

11  other relief provided, and does not reduce the benefit to the class.  *Id.*

12              Representative plaintiffs, as opposed to designated class members who are not

13  named plaintiffs, are eligible for reasonable incentive payments.  *Staton,* 327 F.3d at 977.

14  Whether to authorize an incentive payment to a class representative is a matter within the court's

15  discretion.  The criteria courts consider in determining whether to approve an incentive award

16  include: "1) the risk to the class representative in commencing suit, both financial and otherwise;

17  2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of

18  time and effort spent by the class representative; 4) the duration of the litigation[;] and[ ] 5) the

19  personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."

20  *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

21              In considering each of the factors here, the court finds they weigh in favor of the

22  award.  Each of the named plaintiffs, in their declarations in support of the motion, submit they

23  have spent considerable time assisting with the litigation, which has lasted for nearly four years,

24  by attending depositions, providing their vehicles for inspections, and having regular

25  communications with the attorneys.  *See* ECF Nos. 79-10, 79-11, 79-12.  Each plaintiff's

26  declaration describes a "disruption to [their] business and personal life" (*id*. ¶ 10), says they will

27  receive no other benefit beyond the settlement for serving as a class member, and have no

28  conflicts of interest.  *Id*.  Their modest request is comparable to other enhancement awards in

1   similar cases.  *See, e.g., Aarons*, 2014 WL 4090564, at *19; *Cervantez v. Celestica Corp.*, 2010

2   WL 2712267, at *6 (C.D. Cal. July 6, 2010).  The enhancement award is GRANTED.

3   VII.     CONCLUSION

4           IT IS HEREBY ORDERED that plaintiffs' motion for final approval of the class

5   and collective actions settlements is GRANTED as follows:

6   1.    Solely for the purpose of the settlement and based on Federal Rule of Civil Procedure 23,

7         the court hereby certifies the proposed class.

8   2.    The court hereby approves the terms of the settlement agreement as fair, reasonable, and

9         adequate as they apply to the class, and directs consummation of all the agreements' terms

10        and provisions.

11  3.    The settlement agreements shall be binding on defendant and all plaintiffs, including all

12        members of the class, under the settlement agreement.

13  4.    The court dismisses with prejudice all claims belonging to the Representative Plaintiffs

14        and settlement class members who did not timely and validly request exclusion from the

15        settlement class.  Except as expressly provided in the Settlement Agreement, each of the

16         parties, including each settlement class member, shall bear his, her, or its own costs and

17        attorneys' fees.

18  5.    The court in its discretion maintains jurisdiction to enforce the terms of the parties'

19        Settlement Agreement.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381

20        (1994); *cf. Collins v. Thompson*, 8 F.3d 657, 659 (9th Cir. 1993).

21  6.    No later than sixty days after the date of this order the claims administrator shall disburse

22        the settlement amount due to each class member.

23  7.    Class Counsel is entitled to fees in the amount of $808,254.51.

24  8.    Class Counsel is entitled to costs in the amount of $41,745.49.

25  9.    Plaintiffs Stacie Zakskorn, Rachelle Schreiber, and Javier Hidalgo are entitled to

26        enhancement awards of $2,500 each.

27  /////

28  /////

27

10.     Within 30 days of the Effective Date, or within 30 days after the date when all appeals with respect to class counsel fees and expenses have been fully resolved, whichever occurs later, Honda shall pay these amounts to Caddell & Chapman to be distributed to Class Counsel.

IT IS SO ORDERED.

DATED:  June 8, 2015.

_____
UNITED STATES DISTRICT JUDGE